Matthew Righetti (SBN 121012)
matt@righettilaw.com
John Glugoski (SBN 191551)
jglugoski@righettilaw.com
**RIGHETTI GLUGOSKI, PC**
2001 Union Street, Suite 400
San Francisco, California 94123
Telephone: (415) 983-0900

Reuben D. Nathan (SBN 208436)
rnathan@nathanlawpractice.com
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
Fax No.:   (949) 209-0303

Attorneys for Plaintiffs,
IGNACIO MACIEL, RUTH TORRES, and all others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO MACIEL, RUTH TORRES on behalf of themselves and all other similarly situated employees, <br><br> Plaintiffs, <br><br> v. <br><br> M.A.C. COSMETICS INC.; and DOES 1–50, inclusive, <br><br> Defendants. | Case No.: 3:23-CV-03718-AMO <br><br> Assigned to Hon. Magistrate Judge Araceli Martinez-Olguin <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date: June 5, 2025 <br> Time:          2:00 p.m. <br> Courtroom:   10 |

1

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT** on June 5, 2025 at 2:00 p.m. in Courtroom 10 of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Ignacio Maciel and Ruth Torres, will, and hereby do, move for an order:

1. Granting preliminary approval of the proposed Joint Stipulation of Class Action and PAGA Settlement;

2. Appointing Plaintiffs as Class Representatives;

3. Appointing Plaintiffs' counsel as Class Counsel;

4. Appointing ILYM Group, Inc. as the Settlement Administrator;

5. Approving the form of notice to the Class and Notice Procedures;

6. Setting the hearing date for a Motion for Final Approval and other related dates and deadlines.

This motion is made on the grounds that the settlement is fair, reasonable, and adequate because it is the product of arm's-length, good-faith negotiations after significant litigation, and given the relative strengths and weaknesses of the claims and defenses, as well as the risks involved in pursuing further litigation. This motion will be based upon this Notice, the accompanying Memorandum of Points and Authorities, Declaration of Matthew Righetti, Declaration of Reuben D. Nathan, as well as the pleadings and papers on file herein and upon any other matters that may be presented to the Court at the hearing.

Respectfully submitted,

DATED:   January 16, 2025

**RIGHETTI GLUGOSKI
NATHAN & ASSOCIATES, APC**

*/s/ Matthew Righetti*
Attorneys for Plaintiffs,
IGNACIO MACIEL, RUTH TORRES, and
all others similarly situated

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

   A.   Procedural Status................................................................................................ 1

   B.   Proposed Settlement.......................................................................................... 2

II.  TWO STEP APPROVAL PROCESS ................................................................. 3

III. THE PROPOSED SETTLEMENT ..................................................................... 5

   A.   The Experience of Class Counsel and Defense Counsel................................... 6

   B.   Investigation Conducted in the Case ................................................................ 6

   C.   The Risks Inherent in the Certification Process ............................................... 7

   D.   Key Terms of The Settlement .......................................................................... 7

   E.   The Proposed Notice Program Complies with the Requirements of FRCP Rule 23 .......... 10

   F.   Conditional Certification for the Settlement Classes ...................................... 10

   G.   Class Certification is Appropriate for Settlement Purposes ........................... 11

      1.   The Elements Of Rule 23(A) Are Satisfied ................................................ 11

         *a. Rule 23(a)(1) Numerosity*.......................................................................... 11

         *b. Rule 23(a)(2) Commonality*....................................................................... 11

         *c. Rule 23(a)(3) Typicality*............................................................................. 11

         *d.Rule 23(a)(4) Adequacy of Representation* ............................................... 12

      2.   The Elements Of Rule 23(B)(3) Are Satisfied ........................................... 12

         *a. Common Questions Predominate*............................................................... 12

         *b.A Class Action Is Superior* ....................................................................... 13

   H.   The Settlement Is Fair and Reasonable .......................................................... 13

      1.   The Settlement is Fair Given the Settlement Benefits and the Risks Associated with Continued Litigation ................................................................................. 14

         a.   Regular Rate Claim................................................................................... 14

         b.   Hours Worked "Off the Clock" ................................................................ 15

  c. Expense Reimbursement ............................................................................. 16

  d. Wage Statement Claim ............................................................................ 16

  e. Waiting Time Claim ................................................................................ 17

  f. Potential Value of Claims ....................................................................... 17

 2. The PAGA Settlement Should Be Approved .................................................. 18

 3. The Service Awards to the Class Representatives Are Fair and Reasonable .................. 19

 4. Plaintiffs Are Entitled to Reasonable Attorney's Fees and Costs .................................. 20

IV. ACTIONS REQUESTED AS PART OF THE MOTION FOR PRELIMINARY APPROVAL

............................................................................................................................................... 20

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

*Alvarado v. Dart Container Corp. of California,*

    4 Cal.5th 542 (2018) ................................................................................................................ 15

*Amchem Prods. Inc. v. Windsor,*

    521 U.S. 591 (1997) ............................................................................................................... 12

*Arias v. Superior Court,*

    46 Cal. 4th 969 (2009) ........................................................................................................... 18

*Baumann v. Chase Inv. Servs. Corp.,*

    747 F.3d 1117 (9th Cir. Cal. 2014) ....................................................................................... 18

*Brown v. Hain Celestial Grp., Inc.,*

    2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016) ......................................................... 13, 14

*Castillo v. Bank of America, NA,*

    980 F.3d 723 (C.A.9 (Cal.), 2020 ......................................................................................... 15

*Evans v. Wal-Mart Stores, Inc.,*

    2020 WL 6253695, at *8 (C.D.Cal., 2020) ........................................................................... 16

*Fernandez v. Victoria Secret Stores, LLC,*

    2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008) .............................................................. 13

*Gaudin v. Saxon Mortgage Servs., Inc.,*

    2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) .......................................................... 19

*Hammon v. Barry,*

    752 F. Supp 1087 (D.D.C. 1990) ............................................................................................ 5

*Hanlon v. Chrysler Corp.,*

    150 F.3d 1011 (9th Cir. 1998) ......................................................................................... 11, 12

*In re Heritage Bond Litig.,*

    2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005) ............................................................ 14

*In re Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,*

    618 F.3d 988, 991 (9th Cir. 2010) ......................................................................................... 20

*Jimenez v. Allstate Ins. Co.,*

    765 F.3d 1161 (9th Cir. 2014) ............................................................................................... 16

*Lerwill v. Inflight Motion Pictures, Inc.,*

    582 F.2d 507 (9th Cir. 1978) ................................................................................................. 12

*Mars Steel Corp. v. Continental Illinois Bank and Trust Co.,*

    834 F.2d 677, 681 (7th Cir. 1987) ................................................................. 5

*Miller v. CEVA Logistics USA, Inc.,*

    2015 WL 4730176, at * 9 (E.D. Cal. Aug. 10, 2015) .................................. 19

*Nat'l Rural Telecom's Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 14, 18

*Rodriguez v. West Publ'g Corp.,*

    563 F.3d 948 (9th Cir. 2009) ................................................................... 19

*Smith v. Lux Retail N. Am., Inc.,*

    2013 WL 2932243 at *4 (N.D. Cal. Jun. 13, 2013) .................................. 19

*Van Vranken v. Atlantic Richfield Co.,*

    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 19

*Weeks v. Kellogg. Co.,*

    2013 WL 6531177, at *34 (C.D. Cal. Nov. 23, 2013). ........................... 19

*Welling v. Allexy,*

    155 F.R.D. 654 (N.D. Cal. 1994) ............................................................ 11

*Wren v. RGIS Inventory Specialists,*

    256 F.R.D. 180, 210 (N.D. Cal. 2009) .................................................... 13


**RULES & STATUES**

Cal. Code Regs., tit. 8, § 13520 .................................................................... 17

Cal. Labor Code § 203 ................................................................................... 17

Cal. Labor Code § 2699(l)(2) ......................................................................... 18

Cal. Labor Code § 2802 ................................................................................. 16

Cal. Labor Code § 510(a) .............................................................................. 15

Cal. Labor Code § 226(a) .............................................................................. 16

Cal. Labor Code. § 2699(e)(2) ....................................................................... 18

Fed. R. Civ. P. Rule 23 .................................................................................. 10

Fed. R. Civ. P. Rule 23(a) ....................................................................... 10, 11

Fed. R. Civ. P. Rule 23(A) ............................................................................ 11

Fed. R. Civ. P. Rule 23(a)(1) ......................................................................... 11

Fed. R. Civ. P. Rule 23(a)(2) ......................................................................... 11

Fed. R. Civ. P. Rule 23(a)(3) ........................................................................................ 11

Fed. R. Civ. P. Rule 23(a)(4) ........................................................................................ 12

Fed. R. Civ. P. Rule 23(b)(3) .......................................................................... 10, 12, 13

Fed. R. Civ. P. Rule 23(c)(2)(B) .................................................................................. 10

Fed. R. Civ. P. Rule 23(e) .......................................................................................... 1, 3

**OTHER AUTHORITIES**

DLSE Manual Section 49.2.4.2 ...................................................................................... 15

DLSE, Minimum Wage Bulletin, 2011 .......................................................................... 16

IWC's 1976 Statement of Basis for Wage Order 7 ........................................................ 16

Manual for Complex Litigation (3rd Ed.) §30.41 ...................................................... 4, 5

Manual for Complex Litigation (3rd Ed.) §30.45 .......................................................... 5

Newberg on Class Actions (4th Ed.) § 11.41 ............................................................... 13

Newberg on Class Actions (4th Ed.) §11:24 .................................................................. 3

Newberg on Class Actions (4th Ed.) §11:25 .................................................................. 4

Newberg on Class Actions (4th Ed.) §11.47 .................................................................. 6

Newberg on Class Actions (4th Ed.) §11.51 .................................................................. 5

Newberg on Class Actions (4th Ed.).§11:27 .................................................................. 5

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT

Plaintiffs Ignacio Maciel and Ruth Torres (collectively "Plaintiffs") and Defendant M.A.C. Cosmetics, Inc. ("MAC" or "Defendant") have reached a proposed settlement resolving all claims in this putative wage-and-hour class action and PAGA action. Plaintiffs move this Court for preliminary approval of this settlement pursuant to Fed. R. Civ. P. Rule 23(e).[1]

## I.

## INTRODUCTION

### A. Procedural Status.

MAC is a subsidiary of the Estée Lauder Companies and is headquartered in New York.  MAC sells products at retail locations located throughout the United States. Plaintiffs were each employed by MAC for several years during the statutory period as retail store employees in MAC's California stores. Righetti Decl., ¶ 2.

On April 27, 2022, Plaintiffs filed this putative class action in the San Francisco Superior Court (Case No. CGS-22-599387) (the "*Maciel* action") against MAC. MAC removed the *Maciel* action to the United States District Court for the Northern District of California on June 30, 2022 (Dkt. No. 7, Case No.:  3:22-cv-03885-JSC). On November 30, 2022, the Hon. Jacqueline Scott Corley granted Plaintiffs' Motion to Remand and Plaintiffs' case was sent back to state court (Dkt. No. 20). The parties engaged in discovery in state court until MAC again removed the *Maciel* action to federal court where it was assigned case number 3:23-cv-03718-TSH (Dkt. No. 3). On July 28, 2023, the *Maciel* action was reassigned to the Honorable Araceli Martinez-Olguin. (Dkt. No. 6).

The *Maciel* action contends MAC had uniform policies and practices that (a) failed to properly include eligible wages in the regular rate when calculating overtime pay under California law, (b) failed to pay for the time store employees prepared for work (hair and makeup) per a MAC Image policy, (c) failed to pay for dress code expenses under Labor Code 2802, (d) failed to provide required wage statement information pursuant to California Labor Code Sec. 226, and (e) failed to pay all wages owed at termination pursuant to Labor Code Sec. 203. Plaintiffs seek both damages for the putative class and penalties on behalf of the State of California for Labor Code violations

---

[1] The terms of the proposed settlement are set forth in the Joint Stipulation of Class Action and PAGA Settlement and Release ("SA") marked and attached to the Declaration of Matthew Righetti ("Righetti Decl.") as Exhibit 1.

pursuant to the Private Attorneys' General Act ("PAGA"). (Dkt. No. 36, Third Amended Complaint ("TAC"))

On August 16, 2023, Plaintiff Ebony Byrd filed an action ("the *Byrd* action") in Los Angeles Superior Court, Case No. 23STCV16114, which was removed by Mac to the Unites States District Court for the Central District of California (Case No. 2:23-cv-06720-GW-E). The *Byrd* action was assigned to the Honorable Judge Wu in Courtroom 9D. There were three stipulations to reschedule scheduling conferences filed from September 23, 2023, through January 17, 2024. (Dkt. Nos. 12, 14, 17). From the docket in the *Byrd* action and from discussions with Defendant's counsel, it appears that no discovery has been conducted in the *Byrd* action. On February 22, 2024, MAC filed a motion to dismiss or stay in the alternative in the *Byrd* action. (Dkt. No. 31). On March 14, 2024, the Honorable Judge Wu ruled that the "first to file rule" applied to the *Byrd* action and transferred the *Byrd* action to the Northern District of California considering the earlier-filed *Maciel* action. (Dkt. No. 37). Righetti Decl. ¶ 6.

On April 10, 2024, this Court determined that the *Byrd* action was "related" to the *Maciel* action. (Dkt. No. 43). On April 24, 2024, Plaintiffs filed a Motion for Appointment of Interim Class Counsel pursuant to Fed. R. Civ. P. Rule 23(g). (Dkt. No. 44). On October 15, 2024, the Court granted Plaintiffs' Motion for Appointment of Interim Class Counsel appointing Righetti Glugoski, P.C. and Nathan & Associates, APC as Interim Co-Lead Counsel.  (Dkt. No. 56).

MAC filed an Answer denying all allegations and asserting a host of affirmative defenses. Throughout this Action MAC has denied liability and has defended vigorously against the allegations.

**B.  Proposed Settlement.**

The proposed settlement amount of $12,000,000.00 is expected to provide the settlement class members with an average individual payment of approximately $2,271.86 per class member (gross) (i.e., $44.55 per workweek). The estimated average *net* recovery per class member is $1,378.45.[2]

---

[2]    According to MAC's records it is estimated that there are approximately 5,282 class members, who worked approximately 269,334 workweeks.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT

The settlement allocates $300,000.00 to the PAGA penalty claims which, under the PAGA will result in a payment of $225,000.00 to the California Labor and Workforce Development Agency (i.e., 75% of the $300,000.00 amount allocated to resolve the PAGA allegations). The remaining $75,000.00 (25%) will be distributed amongst settlement class members who worked during the PAGA period (PAGA Employees) based on the formula discussed in Section III. D (5) below.[3]

This settlement will fully resolve the lawsuit in connection with the claims alleged in the TAC resolving alleged class claims of individuals who were employed by MAC in California as hourly paid, non-exempt employees, at any time from April 27, 2018, to the date of the Court's order preliminarily approving this Settlement.[4]

Settlement of a class action is a two-step process in which the Court needs to evaluate whether the proposed settlement is within "the ballpark of reasonableness" at the preliminary approval step so that notice can be sent to the class members advising them of the settlement terms and providing them with an opportunity to opt-out of the settlement, or object. Once notice has been sent providing class members the opportunity to object to the settlement, exclude themselves from the settlement, and otherwise comment on the terms of the proposed settlement, a final approval hearing is held for the Court to consider any comments submitted by class members. As set forth below, the settlement is fair, reasonable, and adequate.

## II.

## THE TWO STEP APPROVAL PROCESS

Pursuant to FRCP Rule 23(e), any settlement of class litigation must be reviewed and approved by the Court. This is done in two steps: an earlier conditional review by the trial court and then a detailed review after the period during which notice is distributed to the class members for their comment or objections. *Newberg on Class Actions* (4th Ed.), the "bible of class actions," discusses the process for approving the settlement a class action. At §11:24 "Procedure for Submitting Class Settlement for Approval", *Newberg* states:

---

[3]    Of the 5,282 class members, MAC's records indicate that 2,676 individuals were employed during the shorter PAGA period of April 27, 2021 through the date of preliminary approval ("PAGA Employees").

[4]    The statutory period for claims alleged is four years for wage claims and one year for PAGA penalty claims.

"When the parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement which is submitted to the court for preliminary approval.  The stipulation should set forth the essential terms of the agreement, including but not limited to the amount of settlement, form of payment, manner of determining the effective date of settlement, and any recapture clause.... Usually the court will informally review these proposed settlement papers with counsel and then direct that notice of the proposed settlement and the hearing thereon be issued to all class members by mail, published notice, or a combination thereof.  Counsel for the class plaintiffs will ordinarily submit, contemporaneously with the motion for settlement approval in a common fund class or within a reasonable time thereafter, a petition for allowance of fees and costs from the settlement amount.  Often the court may require counsel to file such a petition along with or shortly after any proffered settlement proposals so that absent class members may be able to calculate or estimate their net recoveries in evaluating the settlement, and in order to permit the court to schedule a joint hearing for approval of both the settlement and the fee petitions. Alternatively, the plaintiff's counsel may agree at the time of submitting the settlement stipulation that they will petition for a reasonable fee not to exceed a given percentage of the common fund."

The next section of *Newberg*, §11:25 "Preliminary Court Approval", states:

"Settling parties in a class action should submit a stipulation of settlement, together with supporting affidavits, to the court for its perusal.  The court must preliminarily determine whether notice of the proposed settlement pursuant to Rule 23(e) should be given to class members 'in such manner as the court directs,' and an evidentiary hearing scheduled to determine the fairness and adequacy of the settlement.  Because notice to the class, with its attendant expenses, and a hearing will be futile gestures if court feels that some of the settlement terms are unacceptable at the outset, the parties are well advised to seek informally a preliminary court response in a pretrial conference that the proposed settlement is within the range of possible judicial approval."

*Newberg* goes on to cite to the *Manual for Complex Litigation* (3rd Ed.) which states at §30.41

"Procedure for Review and Approval":

"Approval of class action settlements involves a two-step process.  First, counsel submit the proposed terms of settlement and the court makes a preliminary fairness evaluation. In some cases this initial evaluation can be made on the basis of information already known to the court, supplemented as necessary by briefs, motions, or informal presentations by the settling parties.  The court may want to hear not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who did not participate in the negotiations.  The judge may also, at this preliminary stage or later, hear the views of the parties' experts or seek the advice of a court-appointed expert or special master.  If the court has reservations, it may advise the parties, who may wish to resume negotiations in an effort to remove potential obstacles to approval.

If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for

attorneys, and appears to fall within the range of possible approval, the courts should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. For economy, courts have in appropriate cases permitted the notice under Rule 23(c)(2) to be combined with the Rule 23(e) notice. Approval is required of the settlement of any action brought as a class action, regardless of whether the settlement occurs prior to certification, and even if the only claims being settled are those of the individual plaintiffs, with the class claims being dismissed without prejudice. Notice is required of any settlement of class claims and is considered advisable even if only the individual claims of the named plaintiffs are settled."

Although pre-certification settlements are scrutinized more closely than settlements where certification has already been granted, both *Newberg* at §11:27 and the *Manual for Complex Litigation* (3rd Ed.) at §30.45 endorse pre-certification settlements, specifically stating, "The costs of litigating class certification are saved and litigation expense is generally reduced by an early settlement." Assuming the Court preliminarily approves the settlement, the Court should order notice to the class. *Manual for Complex Litigation* (3rd Ed.) at §30.41. In the notice, the class members should be apprised of its key terms, including provisions regarding attorneys' fees and costs. In addition, class members should be informed they can request exclusion and object to the settlement. *Id.* Finally, the notice should inform the class members of the time and place of the final fairness hearing. *Id.* A proposed form of notice has been agreed upon by the parties as set forth in Exhibit A to the SA.

## III.

## THE PROPOSED SETTLEMENT

Courts presume the absence of fraud or collusion in negotiation of settlements unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. *Newberg* §11.51; see also *Mars Steel Corp. v. Continental Illinois Bank and Trust Co.,* 834 F.2d 677, 681 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where settlement has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp 1087 (D.D.C. 1990). While the recommendations of counsel concerning the settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be

competent, have experience with this type of litigation, and significant discovery has been completed. See, *Newberg* §11.47.

This settlement was certainly reached because of "arm's length negotiation." Even after substantial discovery was completed followed by a full day of mediation, the parties could not agree on terms. A settlement in principle was reached only after further formal discovery -- followed by several more months of negotiations over the terms of the SA.

**A. The Experience of Class Counsel and Defense Counsel**

This Court has already reviewed the experience and qualifications to the Court in connection with the Motion for Appointment of Interim Class Counsel. (Dkt. No. 56). Class counsel are well aware of both the potential and the risks inherent taking a wage and hour class action through certification and to trial.

MAC's first defense counsel was Morgan, Lewis & Bockius, LLP ("MLP"). MLP is an international law firm with over 2,200 lawyers in 30 offices. See, https://www.morganlewis.com/. MAC replaced MLP with Littler Mendelson, P.C., an international law firm with more than 1,800 lawyers in more than 50 offices. https://www.littler.com/. Both firms are well versed in complex and class action litigation.

**B. Investigation Conducted in the Case**

This case was filed on April 27, 2022, and has been actively litigated since inception. The lawsuit was filed only after class counsel obtained personnel/employment records and conducted interviews with putative class members. PAGA allegations were included after Plaintiffs exhausted the PAGA statutory pre-filing notice requirements. Both the class claims and the PAGA theories were amended several times based on discovery.

Class counsel extensively investigated the allegations and evidence throughout by obtaining the contact information for putative class members, communicating with putative class members, and interviewing those putative class members who were willing to discuss their experiences. This process included obtaining dozens of authorizations directing MAC to release personnel/employee and payroll files for putative class members. These efforts resulted in evidentiary corroboration of Plaintiffs' contentions. During pre-certification discovery in state court, Plaintiff served multiple

sets of written discovery including multiple sets of Special Interrogatories and Requests for Production of Documents. Plaintiffs also scheduled and conducted depositions of key witnesses in state court. Upon the second removal to federal court Plaintiffs complied with their FRCP Rule 26 disclosure obligations, served additional written discovery, and convened depositions of a) individuals who were identified by MAC's Rule 26 disclosures, and b) witness-designees identified by MAC under FRCP Rule 30(b)(6). While discovery was hard-fought, after lengthy meet and confer efforts, MAC was required to produce an extensive array of information showing policies and procedures, bonus plans, personnel data and files, compensation agreements, wage statements and other documents. MAC also produced extensive payroll data (i.e., employee start and end dates, payroll data, going back the entire statutory period, commission/bonus data, salary and overtime information, hours worked per day and/or week, for all putative class members covering the class period). All this information was analyzed in depth by class counsel and Plaintiffs' experts to determine both the risks and the extent of potential liability based on the contentions.

**C. The Risks Inherent in the Certification Process**

Only after Plaintiffs had obtained sufficient discovery to evaluate the case did consider the potential for a resolution before a certification hearing and trial. With the Court's approval, the parties agreed to defer setting a hearing date on Plaintiffs' Motion for Class Certification to mediate this case. (Dkt. Nos. 27-28). The parties remained far apart at the conclusion of the mediation with Mr. Ross, After the mediation discovery efforts were renewed by both sides. Further, Plaintiffs prepared class certification papers/evidence, including retention of trial methodology experts. Mr. Ross regularly discussed litigation developments as the case proceeded. On the eve of filing a motion for class certification the parties reached an agreement in principle pursuant to a mediator's proposal proposed by Mr. Ross.

**D. Key Terms of The Settlement**

Under the Settlement Agreement, the gross settlement fund funded by MAC will be Twelve Million Dollars ($12,000,000.00) ("Gross Settlement Fund"). SA, para. 17. There is no possibility of any reversion to MAC.

1. Settlement Class: The proposed settlement class is defined as:

"Class Member" means a person employed by M.A.C. in California as an hourly paid, non-exempt employee, at any time from April 27, 2018, to the date of the Court's order preliminarily approving this Settlement. Defendant represents that the number of Class Members shall not exceed 5,282 individuals.

SA, para. 6.

2.    Release: The release is limited to claims that were pled, or could have been pled, based on the alleged facts in the various Complaints (including the operative TAC) and the PAGA letters sent to the California Labor Workforce Development Agency (LWDA). Only members of the class that choose not to opt out will be subject to the release. SA, paras. 33-38.

3.    PAGA Allocation: The settlement calls for $300,000.00 to be allocated for resolution of Plaintiffs' claims under the PAGA with 75% thereof earmarked for the LWDA and 25% payable to PAGA Employees. SA, paras. 23-27. Plaintiffs will notify the LWDA of the Settlement as required by statute.[5]

4.    Net Settlement Amount: The net settlement for the class is defined as follows:

"Net Settlement Amount" means the portion of the Gross Settlement Amount remaining after deduction of the approved Class Representative Enhancement Payments, Settlement Administration Costs, the LWDA's portion of the PAGA Settlement Amount, and Class Counsel's Award.

SA, para. 20

5.    Distribution Formula: Each class member who does not opt-out will be entitled to his or her share of the settlement fund that is directly proportional to the number of workweeks during which the class member was employed by MAC in California during the class period. The number of workweeks during which a class member was employed by MAC in California will be calculated as a percentage of the overall number of workweeks for the respective class. Class members will receive their pro-rata share of the available settlement funds. This formula is explained to class members in the proposed notice of settlement, which will include preliminary figures setting out the class member's weeks worked during the class period and the approximate percentage of the total class workweeks. SA, Ex. A. After attorneys' fees and costs, settlement administration costs,

---

[5]    Confirmation that Plaintiffs have notified the LWDA will be provided via declaration at the time of final approval.

amounts paid to the Plaintiffs as service awards, and amounts paid to the California LWDA pursuant to PAGA, the average net class member award will be approximately $1,378.45.

6.    <u>Requirements to Receive Payment</u>: Settlement class members (i.e., class members who do not opt out) will receive their pro-rata share of the settlement. All class members employed by MAC within one year of the case will receive their pro-rata share of the PAGA payment.

7.    <u>Tax Allocation</u>: For tax purposes, 22% of any payment to a class member shall be treated as W-2 wages, 78% as 1099 non-wage payments consisting of interest, penalties, liquidated damages, and related aspects of the settlement.  SA, para. 53. The employer's share of payroll taxes will be paid by MAC from separate funds and in addition to the Gross Settlement Fund. SA, para. 17.

8.    <u>Service Awards</u>: The settlement calls for service payments to the class representatives (subject to Court approval) of $20,000 each. SA, para. 9.

9.    <u>Attorneys' Fees and Costs</u>: Plaintiffs' attorneys' fees are included in the gross settlement and capped at no more than $35%, or $4,200,000.00. SA, para. 4. Plaintiffs' costs are also included in the gross settlement and capped at no more than $150,000.00. After preliminary approval Plaintiffs will make a motion for attorneys' fees and costs under Rule 23(h).

10.    <u>Notice of Proposed Settlement</u>: The proposed class notice (SA, Ex. A) sets forth in plain terms, a statement of case, the terms of Settlement, the nature of the claims that are being released, the approximate amount of attorneys' fees, costs, and service awards being sought, an explanation of how the settlement allocations are calculated, each class member's percentage of the total class workweeks, as well as an approximate amount of money they would receive for the class, in the event all class members participate in the settlement. ILYM Group, Inc., the parties' selected Settlement Administrator, will undertake its best efforts to ensure that the notice is provided to the current addresses of class members, including conducting a national change of address search and re-mailing the notice to updated addresses. *Id*. ILMY Group's qualifications are attached to the Declaration of Matthew Righetti as Exhibit 2.

//

//

### E.  The Proposed Notice Program Complies with the Requirements of FRCP Rule 23

The proposed notice program complies with the notice requirements set forth in FRCP Rule 23. The class members are not required to return a claim form to receive their share of the settlement. Although the Proposed Notice need not meet the standards of Rule 23(c)(2)(B), it nonetheless meets the same standards.

The distribution of class notices to the last known address for class members via first class mail satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. Class members will have 45 days to exclude themselves or object. Skip tracing will be conducted both before mailing and for any mail returned as undeliverable (along with prompt remailing). SA, para. 38, 56. The settlement administrator will calculate and distribute all checks paid out of the settlement fund following the Effective Date. (SA, paras. 15, 54).

### F.  Conditional Certification for the Settlement Classes

The SA provides for conditional certification of a class.  While MAC disputes the claims asserted would be certified in a contested motion, for settlement purposes only MAC agrees that the requisites for establishing class certification are met.  Fed. R. Civ. P. Rule 23(a) provides the following prerequisites to certification of a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the above, Fed. R. Civ. P. Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for adjudicating the case.

//

//

### G.  Class Certification is Appropriate for Settlement Purposes

#### 1.  The Elements Of Rule 23(A) Are Satisfied

##### a.  *Rule 23(a)(1): Numerosity*

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. Rule 23(a)(1). Numerosity is satisfied with as few as 40 class members. *See Welling v. Allexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994). Here, numerosity is satisfied because there are over 5,000 current and former employees in the proposed class/settlement all of whom are identifiable from MAC's records. Righetti Decl., ¶ 25.

##### b.  *Rule 23(a)(2): Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. Rule 23(a)(2). The commonality requirement is permissively construed by the Ninth Circuit such that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs meet the criteria of Rule 23(a)(2) because the claims turn upon answers to overarching common questions regarding MAC's policies and procedures that are capable of class-wide resolution for settlement purposes. For settlement purposes, the common questions raised by class members, include: whether MAC maintained a uniform policy of failing to properly include all qualifying wages in the regular rate when calculating the overtime rate. As a result, the predominate class-wide common issue is whether MAC's payroll calculation method was correct. Because every member of the proposed class, by definition, personally performed labor, each class member was both subject to the same policies and asserts the same types of injury arising from the same conduct. Thus, there exists multiple common questions establishing Rule 23(a) commonality, including whether MAC paid for all expenses and hours worked under California law and whether MAC provided accurate wage statements to class members. Righetti Decl. ¶ 26.

##### c.  *Rule 23(a)(3): Typicality*

Plaintiffs must establish that the "claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This is a permissive standard that

is met so long as the representative claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Here, the proposed class Plaintiffs seek to represent satisfy the typicality requirement because they have held the same positions as other class members and assert the same types of injury arising from the same conduct by MAC. Righetti Decl. ¶ 27.

### d. Rule 23(a)(4): Adequacy of Representation

Rule 23 also requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(4). To satisfy this element, Plaintiffs must establish that: (1) the class representatives do not have a conflict of interest; and (2) class counsel will adequately represent the interests of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Plaintiffs both worked for MAC during the relevant class period and there is no conflict of interest between the class representatives and the proposed settlement class. Plaintiffs' claims are based on the same theories and facts as the other class members. Neither Plaintiffs nor class counsel possess any conflict which would prevent them from adequately representing the class. Furthermore, Plaintiffs and class counsel are well qualified and willing to vigorously prosecute the interests of the class. The adequacy requirement is satisfied. Righetti Decl. ¶ 28

### 2. The Elements Of Rule 23(B)(3) Are Satisfied

Fed. R. Civ. P. Rule 23(b)(3) certification is proper when common questions "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient resolution of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance and superiority requirements are satisfied for purposes of certifying the proposed Settlement Class.

### a. Common Questions Predominate

"The Rule 23(b)(3) predominance inquiry tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Here, Plaintiffs' claims present sufficient common issues of law and fact that predominate over individual issues and warrant class certification. Among other things, Plaintiffs allege that MAC failed to properly include wage payments in the regular rate when calculating the

overtime rate and thus failed to pay wages for all hours worked, including overtime wages. Plaintiffs further allege that MAC failed to pay for expense reimbursements and hours worked, failed to timely pay wages to discharged and terminated employees, and failed to provide accurate itemized wage statements. The class-wide common issues are whether MAC's uniform personnel/payroll policies and practices adhered to California law in these respects. Plaintiffs allege these violations were the result of common policies and practices implemented by MAC. Thus, class treatment is appropriate.

### *b.  A Class Action Is Superior*

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication." This requirement is satisfied because there is no indication that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this forum is undesirable for any reason. Fed. R. Civ. P. 23(b)(3)(A)-(D). In addition, the alternative of hundreds of individual actions "is not realistic." *See Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 210 (N.D. Cal. 2009). Accordingly, certification of a settlement class is superior to any other method of resolving this matter, since it will promote economy, expediency, and efficiency.

### H. The Settlement Is Fair and Reasonable

As noted, MAC strongly denied liability. Where a settlement is the product of arms-length negotiations conducted by experienced class counsel and follows sufficient discovery, the Court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008). At this stage, so long as the settlement falls into the range of possible approval, the presumption applies, and the settlement should be preliminarily approved.

First, the settlement was reached after settlement negotiations supervised by a well-respected mediator experienced in complex wage and hour class action cases, Jeff Ross. The Parties participated in a full-day formal mediation as well as many additional informal settlement discussions directly between counsel for the Parties. Righetti Decl., ¶ 12.

//

Second, class counsel has investigated the factual and legal issues raised in this action, and diligently litigated the class members' claims. As noted above, extensive exchanges of documents, data and information allowed the parties to assess the strengths and weaknesses of the claims herein and the benefits of the proposed settlement. Righetti Decl. ¶ 13. This produced a thorough vetting (pre-settlement) of both the factual and legal bases for Plaintiffs' claims and the key defenses to those claims. Accordingly, the fact that qualified and well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate weighs heavily in favor of approval. *See Hain Celestial Grp.*, 2016 WL 631880, at *5.

### 1. The Settlement is Fair Given the Settlement Benefits and the Risks Associated with Continued Litigation

A proposed settlement is a compromise and is not measured against a potential ideal result. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005) (quoting *Officers for Justice*, 688 F.2d at 625) (a proposed settlement should not "'be judged against a hypothetical or speculative measure of what might have been achieved.'"); *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

The settlement here represents a very strong result for the class. Participating class members stand to receive a net average share of over $1,378.45 per person. This translates to a net of $27.03 per workweek. Class members with longer terms of service will receive more than those who were employed for a shorter period. For instance, an employee who worked 2 years would receive twice as much as an employee who worked for 1 year. This will bring substantial relief to the class, fairly allocated, which is largely composed of workers who, as a practical matter, lack the means to bring individual suits to assert their rights.

### a. Regular Rate Claims.

The "regular rate of pay" is a legal term of art defined by state/federal statutes and a long line of state and federal case law. "Under California law, employers must pay non-exempt employees who work overtime a premium on top of their "regular rate of pay." Cal. Labor Code §

510(a); *Castillo v. Bank of America, NA,* 980 F.3d 723, 727 (C.A.9 (Cal.), 2020.  A variety of wages must be included in the regular rate.

Further in California, the correct calculation of the regular rate of pay differs based on whether a flat sum payment is involved. For wages paid as a flat sum, employers are required to make the regular rate calculation using, as the denominator, <u>only</u> the non-overtime hours worked in the pay period. See, DLSE Manual Section 49.2.4.2; *Alvarado v. Dart Container Corp. of California*, 4 Cal.5th 542, 566 (2018), which provides:

> "We can discern  no basis for holding that the per-hour value of a flat sum bonus should be calculated as if a part-time employee were actually working a full-time schedule, thus dramatically reducing the overtime pay rates of part-time employees in California. Such a rule would contradict the principle that our state's labor laws must be liberally construed in favor of worker protection. (citations omitted). Nor would we be furthering this state's policy of discouraging the imposition of overtime work (citations omitted) if we were to permit employers to dilute the value of the flat sum bonuses that their part-time employees earned, fictionally treating those bonuses as if the part-time employees were working full-time schedules."]  The holding by the California Supreme Court could not be more clear:  "We conclude that the flat sum bonus at issue here should be factored into an employee's regular rate of pay by dividing the amount of the bonus by the total number of non-overtime hours actually worked during the relevant pay period and using 1.5, not 0.5, as the multiplier for determining the employee's overtime pay rate."

*Alvarado*, 4 Cal.5th 542, 573; also see, *Castillo v. Bank of America, NA*, 980 F.3d 723, 731 (C.A.9 (Cal.), 2020)

MAC contends it properly included all wages payments in the regular rate, while Plaintiffs felt confident that MAC's regular rate calculations were incorrect.  MAC provided records showing both a) overtime hours worked by class members, and b) bonus/commission wages paid to class members. Using this data – and with the assistance of experts -- Plaintiffs were able to estimate the amount in controversy under the regular rate theory. Righetti Decl.  ¶ 14.

### b.  Hours Worked "Off the Clock".

Plaintiffs contend all putative class members are required to work "off the clock" to adhere to the *Mac Image* policy based on the theory that by the time MAC employees show up for work, they have already worked 60-90 minutes on their appearance (hair and makeup) to meet the required *MAC Image* policy. MAC believed the time spent by class members preparing for work was not eligible for wage compensation because, *arguendo*, a) it was outside the definition of

"hours worked" as defined by California law, and b) its timekeeping policies forbid off the clock work. The value of the off the clock claim varied considerably based on information/estimates provided by class members. Righetti Decl. ¶ 15.

### c. Expense Reimbursement.

Plaintiffs contend class members are required to comply with a dress code policy for which reimbursement is required pursuant to Wage Order 7 § 9 and Labor Code § 2802. As the IWC's 1976 Statement of Basis for Wage Order 7 provides: "With regard to color and design of uniforms (subsection A), ordinary work clothes are not considered to be uniforms when the employees have a free choice of what to wear, but when the employer specifies the design or color … the employer does so for his or her own advantage as a matter of advertising, public image, or some other business function … It is inappropriate for employers to require employees to bear such an expense." *Id.*; *see also,* DLSE, Minimum Wage Bulletin, 2011 ("When the employer specifies the design or color … it is considered a uniform"). The central issue on this claim is whether MAC has a policy of requiring employees to purchase clothing constituting a uniform for which employees are not reimbursed employees for the cost. See, *Jimenez v. Allstate Ins. Co*., 765 F.3d 1161 (9th Cir. 2014) and progeny. Liability for the expense claim turns on whether MAC's dress policy is a uniform under California law.

### d. Wage Statement Claim.

The Labor Code 226(a) wage statement claim is based on the contention that class members were provided only electronic wage statements without having been provided an election to receive a written paper stub or record. See, *Evans v. Wal-Mart Stores, Inc.,* 2020 WL 6253695, at *8 (C.D.Cal., 2020)["the DLSE explicitly recommends that employers implementing an electronic wage statement system give employees the right to "elect to receive paper wage statements at any time." (2006 DLSE Letter at 3.) Moreover, the DLSE's guidance does not suggest that providing employees the option of printing their electronic wage statements into hard copies exempts employers from providing employees the option of receiving paper checks and wage statements upon request."]

//

1

### e.  Waiting Time Claim.

Plaintiffs' claim under Labor Code 203 contends MAC wilfully failed to timely pay all wages owed when employees to former employees (i.e., immediately for those who are terminated and within for 72 hours for those who resign). Labor Code §§ 200-204. A "willful" failure to pay wages occurs when an employer "intentionally fails to pay wages to an employee when those wages are due," but "a good faith dispute that any wages are due will preclude the imposition of waiting time penalties." (Cal. Code Regs., tit. 8, § 13520). A "good faith dispute" occurs "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id.*  MAC asserts that its polices are compliant and/or a good faith dispute exists as to the legality of its policies. Plaintiffs believe they could show willfulness but also acknowledge the risk that the Court may not agree on this issue.

### f.  Potential Value of Claims.

Plaintiffs' counsel estimates the value of the claims as follows:

- the value of the "regular rate" claim for the class ranges from zero to $114,375.00. Righetti Decl., ¶ 14. The bottom end of that range is based on the possibility of the Court finding that MAC properly calculated the overtime rate as well as time records showing that many class members were part time employees who infrequently worked overtime. *Id.*

- the value of the "off the clock" claim ranges from zero to $5,766,440.90 [$21.41 per hour * 269,334 total workweeks * 1 hour per week (representing 20 min @3 times a week on average] and $720,805.00 [one half hour per month for pre-shift theme day efforts]. Righetti Decl., ¶ 15. The bottom end of the range is based on the possibility of the Court finding that this time does not constitute "hours worked" and/or whether the Court would certify the claim. The upper range was based on a fair approximation based on reports compiled from dozens of class member interviews. *Id.*

- The value of the expense reimbursement claim ranges between zero and $2,500,000.00. In connection with the removal of this action from state Court, MAC estimated at the top end that the reasonable and conservative assumption average cost would be approximately $54.42 per month Righetti Decl., ¶ 16.

1    • The range of value for the waiting time claims is between zero and $14,162,715.00.

2    Righetti Decl., ¶ 18.

3    The potential risks which accompany further litigation support preliminary approval.

4    Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the

5    comparative benefits of "immediate recovery by way of the compromise to the mere possibility

6    relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommunications*

7    *Coop.*, 221 F.R.D. at 526. Proceeding to trial (and the inevitable appeals) could add three years or

8    more to the resolution of this case, which has already been pending for several years. When the

9    risks of prevailing at both certification and trial are factored into the equation, the settlement value

10   is reasonable and supported. Indeed, the $12,000,000.00 settlement represents 53.23 percent of

11   the potential estimated exposure of $22,543,530.90. Given that the class members in this case are

12   primarily low wage workers for whom receiving speedy remuneration is particularly important,

13   the potential for years of delayed recovery is a significant concern. Considered against the risks

14   of continued litigation, and the importance of the employment rights and a speedy recovery to

15   class members, the totality of relief provided under the proposed settlement is more than adequate

16   and well within the range of reasonableness.

17              **2.    The PAGA Settlement Should Be Approved**

18   California Labor Code section 2699(l)(2) provides that the court shall review and approve

19   any settlement of any civil action filed pursuant to the PAGA. The California Supreme Court has

20   held that an employee who sues an employer under the PAGA need not satisfy class action

21   requirements. *Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009). For example, "PAGA has no

22   notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA

23   action." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014).

24   The potential value of PAGA penalties ranges between zero and $1,045,960.00. Righetti

25   Decl., ¶ 8(e).  Assuming labor code violations took place, the law allows the Court discretion to

26   award less than the amount that would otherwise be owed. Cal. Lab. C. § 2699(e)(2). MAC raised

27   arguments to reduce or defeat PAGA penalties, such as challenging Plaintiffs' attempt to stack

28

1    PAGA civil penalties with statutory penalties. *Smith v. Lux Retail N. Am., Inc*., 2013 WL 2932243

2    at *4 (N.D. Cal. Jun. 13, 2013).

3            **3.    The Service Awards to the Class Representatives Are Fair and Reasonable**

4            Named plaintiffs in class action litigation are eligible for reasonable service awards.

5    Service awards "are intended to compensate class representatives for work done on behalf of the

6    class, to make up for financial or reputational risk undertaken in bringing the action, and,

7    sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West*

8    *Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also Weeks v. Kellogg. Co.*, 2013 WL

9    6531177, at *34 (C.D. Cal. Nov. 23, 2013). The factors courts use in determining whether to

10   authorize a service award include: "'1) the risk to the class representative in commencing suit,

11   both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class

12   representative; 3) the amount of time and effort spent by the class representatives; 4) the duration

13   of the litigation[;] and 5) the personal benefit (or lack thereof) enjoyed by the class representative

14   as a result of the litigation.'" *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D.

15   Cal. 1995).

16           The amounts requested here are reasonable and within the range approved by federal courts

17   in California. *See, e.g., Gaudin v. Saxon Mortgage Servs., Inc.*, 2015 WL 7454183, at *10 (N.D.

18   Cal. Nov. 23, 2015) (finding service award of $15,000 to be "fair and reasonable"); *Miller v.*

19   *CEVA Logistics USA, Inc.,* 2015 WL 4730176, at * 9 (E.D. Cal. Aug. 10, 2015) (Nunley, J.)

20   (approving service award of $15,000 to each plaintiff); *Van Vranken*, 901 F.Supp. at 299

21   (approving $50,000 participation award to plaintiffs).

22           The above factors support the service awards requested here. The service awards are

23   intended to compensate the named Plaintiff for the important role they played for the benefit of

24   the class, and the substantial time, effort, and risks they took to secure the result obtained on behalf

25   of the class.  In agreeing to serve as the class representative, they accepted the responsibility of

26   representing the interests of all class members. Righetti Decl., ¶ 24. Indeed, each of the

27   representative Plaintiffs provided detailed information during lengthy interviews. *Id*. Each

28   provided personnel and payroll documents, identified witnesses, and assisted class counsel in

-19-

investigating this case. *Id*. at ¶ 24. Plaintiffs also assisted in preparing and evaluating the case for both discovery and mediation, and in the settlement process itself. *Id*. Plaintiffs incurred considerable reputational risk in bringing the case. Finally, Plaintiffs signed a broader release than the unnamed class members by agreeing to generally release all claims (based on whatever set of facts or circumstances) that they may have in the present or the future against MAC.  SA at para. 69.

### 4.  Plaintiffs Are Entitled to Reasonable Attorney's Fees and Costs

Plaintiffs' counsel will be filing a separate motion for attorneys' fees and costs pursuant to Federal Rule 23(h). Any portion of the requested fee that is not awarded to class counsel will remain part of the fund available to class members and will not revert to MAC.  SA, at para. 45(b). Plaintiffs propose that they that the fee motion be filed within two weeks of the mailing of the class notice to afford class members a full opportunity to review and comment on it. *See In re Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp*., 618 F.3d 988, 991 (9th Cir. 2010).

Class counsel expended considerable time and resources to the litigation, advanced all expenses and received no compensation. Righetti Decl., ¶¶ 2-7, 22. Class counsel have also incurred substantial out of pocket costs. *Id*. at ¶ 22. Moreover, the fees requested are commensurate with the overall relief obtained and there are no indicia that the fees were negotiated at the expense of class members. In sum, given the favorable terms of the settlement and the way terms were negotiated, the proposed settlement should be preliminarily viewed as a fair, reasonable, and adequate compromise of the issues in dispute. The Court should therefore grant preliminary approval of the settlement, order dissemination of notice to the class for comment, and proceed to a formal fairness hearing.

### IV.

### ACTIONS REQUESTED AS PART OF THE MOTION FOR PRELIMINARY APPROVAL

The settling parties respectfully request this Court, as part of the preliminary approval process, do the following:

1.     Review the proposed settlement (See, SA attached as Exhibit A to the Declaration of M. Righetti);

2.     Find that the proposed settlement (a) preliminarily appears to be fair, reasonable and adequate and within the range of possible approval and sufficient to warrant providing notice to the settlement class, when balanced against the probable outcome of further litigation, given the risks relating to liability and damage, (b) will avoid substantial additional costs by all parties, as well as the delay and risks that would be presented by the further prosecution of the action, and it will provide substantial benefits to settlement class going forward, (c) has been reached as a result of intensive, arm's-length negotiations utilizing an experienced third party neutral mediator, and (d) will avoid substantial additional costs by all parties, as well as the delay and risks that would be presented by the further prosecution of the action.

3.     Conditionally certify, for settlement purposes only, the following settlement class: "individuals employed by M.A.C. in California as an hourly paid, non-exempt employee, at any time from April 27, 2018, to the date of the Court's order preliminarily approving this settlement."

4.     Approve the proposed forms of the class notice (attached as Exhibit A to the SA) and find that the distribution of the Notice of Class Action Settlement meets the requirements of due process and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto;

5.     For settlement purposes only, designates Righetti Glugoski, P.C. and Nathan & Associates as class counsel for the settlement class;

6.     Appoint Plaintiffs as representatives of the settlement class, for settlement purposes only by finding, for settlement purposes only, that the Plaintiffs will adequately represent the settlement class;

7.     Approve ILYM Group as the settlement administrator, whose qualifications and bid for this case are both attached to the Decl. of M. Righetti as Exhibit 2, to administer the notice and settlement in accordance with the terms and conditions of this Order and the SA;

8.      Approve the procedures set forth in the SA, the Notice of Settlement of Class Action, and objections to the Settlement.

9.      Any class members who wish to opt out from the SA must do so within 45 days of the mailed notice date and in accordance with the terms of the SA.

10.     Any class members who wish to object to the SA must do so within 45 days of the mailed notice date, or appear at the Fairness Hearing, in accordance with the terms of the Agreement; and

11.     Approve an order preliminarily approving the proposed settlement on a class basis, directing notice be given to the class in the forms attached as Exhibit A to the SA and pursuant to the terms of the SA, and setting a hearing for Final Approval of the proposed settlement no earlier than thirty days (30) days after the exclusion/objection deadline.

A proposed Order Granting Preliminary Approval is submitted with this Motion for the Court's consideration.

Respectfully submitted,

DATED:  January 16, 2025

**RIGHETTI GLUGOSKI**
**NATHAN & ASSOCIATES, APC**

*/s/ Matthew Righetti*
Attorneys for Plaintiffs,
IGNACIO MACIEL, RUTH TORRES, and
all others similarly situated

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT