UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO MACIEL, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>M.A.C. COSMETICS INC.,<br><br>   Defendant. | Case No. 23-cv-03718-AMO<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 63 |

This is a case about M.A.C.'s alleged failure to compensate its employees for time and expenses incurred to comply with M.A.C.'s dress code. Before the Court is Plaintiffs Ignacio Maciel and Ruth Torres's motion for preliminary approval of class action and PAGA settlement. ECF 63 ("Mot."). This Order assumes familiarity with the facts and procedural history of the case. Because the motion was appropriate for determination on the papers, the Court vacated the July 17, 2025 hearing. ECF 76. Having carefully reviewed the motion and the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

**I.   DISCUSSION**

The Settlement defines a class member as "[a] person employed by M.A.C. in California as an hourly paid, non-exempt employee, at any time from April 27, 2018, to the date of the Court's order preliminarily approving this Settlement," and provides for a gross settlement amount of $12 million. ECF 63-1 ("Settlement") ¶ 6; Declaration of Matthew Righetti ("Righetti Decl.") (ECF 63-2), Ex. A ¶ 17. The Settlement contemplates that Plaintiffs' counsel may request up to 35 percent of the gross settlement amount, caps costs at $150,000, and provides for class representative awards of $20,000 each. Settlement ¶¶ 4, 9. The Settlement allocates $300,000 to the PAGA penalty claims, resulting in a payment of $225,000 to the California Labor and

1    Workforce Development Agency and $75,000 to be distributed among class members who worked
2    during the PAGA period.  Settlement ¶¶ 23-27.  After accounting for these fees, costs, and awards,
3    the net settlement amount will be distributed to the 5,282 class members with an estimated
4    payment of $2,271.86 each and average net recovery of $1,378.45.  No funds will revert to
5    M.A.C.  Settlement ¶ 45(b).

The Court first determines if conditional certification of the class is appropriate before assessing whether the settlement is fundamentally fair, adequate, and reasonable.  Finally, the Court considers Plaintiffs' proposed notice plan.

### A. Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that will bind absent class members.  A court need not conclude the settlement is the best outcome for the class, but rather it must determine that the settlement is fair, adequate, and reasonable.  *In re Calif. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).  Thus, courts may "neither rubberstamp the settlement nor unduly meddle in the parties' affairs."  *Id.*  Where a class action has settled before class certification, courts first determine whether class certification is appropriate before making a "preliminary determination" that the settlement is "fundamentally fair, adequate and reasonable."  *See* Manual for Complex Litigation, Fourth § 21.632 (FJC 2004); *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  Courts will then "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Finally, courts will hold a hearing pursuant to Rule 23(e)(2) for final approval of the settlement.

#### 1. Conditional Certification

Class certification requires a plaintiff to satisfy Rule 23(a)'s requirements – numerosity, commonality, typicality, and adequacy – and one of the bases for certification in Rule 23(b).  As discussed below, Plaintiffs have satisfied Rule 23(a) and Rule 23(b)(3).

First, because the class includes 5,282 individuals, Righetti Decl. ¶ 25, it is sufficiently numerous that joinder of all members is impracticable, and therefore the first Rule 23(a) factor is satisfied.

Second, Rule 23(a)(2) requires commonality, i.e. that there are "questions of fact or law common to the class." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, the question raised by the claims in this action – whether M.A.C. maintained a policy of failing to include all qualifying wages in the regular rate when calculating overtime pay – is common to all class members. Thus, Rule 23(a)(2) is satisfied. *See Noroma v. Home Point Fin. Corp.*, No. 17-CV-07205-HSG, 2019 WL 1589980, at *5 (N.D. Cal. Apr. 12, 2019) (finding commonality where the central question was "whether [defendant] maintained a policy of failing to properly include bonus payments and commissions in the regular rate when it calculated the overtime rate").

Third, Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Courts should determine "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* Claims are typical if they are "reasonably coextensive with those of absent members; they need not be substantially identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon v. Crysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Maciel and Torres are typical of the class because they held the same positions as class members, challenge M.A.C.'s policy of incorrectly calculating overtime, and assert that they were underpaid pursuant to that policy. Thus, their "claims are based on the same legal theory." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007).

Fourth, Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." This requirement "tend[s] to merge" with the commonality and typicality requirements of Rule 23(a), and aims to ensure class members' interests "will be fairly and adequately protected in their absence" and to consider "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 n.13 (1982)). That Maciel and Torres have established commonality and typicality is an indication class members' interests will be protected. Moreover,

3

1 there are no signs of conflict between Maciel and Torres, their counsel, and the proposed class, nor
2 is there any suggestion Plaintiffs or their counsel will cease competently representing the class.

3       In addition to satisfying Rule 23(a), the proposed class must satisfy one of the Rule 23(b)
4 requirements. Plaintiffs argue that certification under Rule 23(b)(3) is proper here, as common
5 questions "predominate over any questions affecting only individual members" and class
6 resolution is "superior to other available methods for the fair and efficient resolution of the
7 controversy." Fed. R. Civ. P. 23(b)(3). Predominance is established where a proposed class is
8 "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v.*
9 *Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem*, 521 U.S. at 594). A common question
10 is one where "the same evidence will suffice for each member to make a prima facie showing [or]
11 the issue is susceptible to generalized, class-wide proof." *Id.* Here, common questions
12 predominate because the issue of whether M.A.C.'s personnel and payroll policies were lawful is
13 susceptible to class-wide proof. That class members' individual damages will partially rely on
14 individualized evidence does not destroy predominance. *Yokoyama v. Midland Nat'l Life Ins. Co.*,
15 594 F.3d 1087, 1094 (9th Cir. 2010) (explaining that although the amount of damages is an
16 individual question, not a common one, "damage calculations alone cannot defeat certification").

17       Superiority exists where it is determined that "a class action is superior to other available
18 methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts
19 consider "(1) the class members' interests in individually controlling the prosecution or defense of
20 separate actions; (2) the extent and nature of any litigation concerning the controversy already
21 begun by or against class members; (3) the desirability or undesirability of concentrating the
22 litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class
23 action." *Id.* There is no indication here that class members seek to individually control their
24 cases, this forum is undesirable, or it would be difficult to manage this case as a class action.
25 While there is litigation in this District involving nearly identical putative classes, the same
26 defendant, and similar facts, this Court stayed that case while it was still in its early stages pending
27 further proceedings in this action, *Byrd v. M.A.C. Cosms., Inc.*, No. 24-cv-01639-AMO (N.D. Cal.
28 Oct. 15, 2024), thus there is no "clear threat of multiplicity and a risk of inconsistent

4

adjudications." *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001). Plaintiffs have therefore satisfied Rule 23(b)(3).

Because Rules 23(a) and 23(b)(3) are satisfied, the Court conditionally certifies the class.

### 2. Fair and Reasonable

Having determined that class certification is proper, the Court considers whether the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d at 674-75. Preliminary approval of a settlement is appropriate where a court makes a preliminary finding that (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitable relative to each other. Fed. R. Civ. P. 23(e)(2). Here, the information submitted to the Court establishes that the Settlement satisfies these factors.

#### a. Adequate Representation

To determine whether class counsel and the class representatives have adequately represented the class, courts consider the competence of counsel and the class representatives' participation in prosecuting the case. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 890 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021). In support of their Motion, Plaintiffs submitted a declaration from class counsel describing counsel's experience with complex class actions and PAGA representative actions. *See* Declaration of Reuben D. Nathan ("Nathan Decl.") (ECF 63-2) ¶¶ 5-7. Counsel has prosecuted over twenty class and PAGA representative actions, including actions asserting wage and hour violations. Nathan Decl. ¶ 7. Counsel is sufficiently experienced and competent, which is an "indication that Plaintiffs have adequately represented the class." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.")).

Additionally, Maciel and Torres have demonstrated that they have adequately represented the class. As described above, Maciel and Torres's interests are aligned with those of the class

members, and they have advanced those interests on behalf of the class through the prosecution of this case. *Cottle*, 340 F.R.D. at 376 (finding adequacy of representation where plaintiffs satisfied Rule 23(a)'s requirements and "willingly, constructively, and effectively contributed to the prosecution of the claims on behalf of the Class"). Both Plaintiffs "provided detailed information during lengthy interviews," "provided personnel and payroll documents, identified witnesses, and assisted class counsel in investigating the case," and "assisted in preparing and evaluating the case for both discovery and mediation, certification and in the settlement process itself." Righetti Decl. ¶ 24. Plaintiffs' active participation in the case demonstrates adequate representation.

Because Maciel and Torres's counsel are experienced class action litigators and because Maciel and Torres have diligently represented the class by providing information to prove up their claims, the Court finds they have adequately represented the class. *See In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. at 890 (finding adequate representation where plaintiffs "vigorously represented the class" by providing information and evidence and where "counsel are experienced class action litigators").

### b. Arm's Length

Courts must not preliminarily approve a settlement with signs of collusion or fraud, suggesting the agreement is not a product of arm's length negotiation. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Courts look for three "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. If present, the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* at 946.

The first sign is when counsel receives a disproportionate distribution of the settlement. *Briseño v. Henderson*, 998 F.3d 1014, 1022-23 (9th Cir. 2021) (citing *Bluetooth*, 654 F.3d at 947). Here, the Settlement provides that counsel may request up to 35 percent of the gross settlement amount. Mot. at 16; Settlement ¶ 4. Courts deciding whether to award attorneys' fees and costs in a common fund case may choose either the lodestar method or the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Regardless of the method

1    chosen by the court, the Ninth Circuit encourages district courts to conduct "a cross-check using
2    the other method." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).
3            Here, counsel states that "[t]he requested awards [of fees and costs] are appropriate under
4    both the lodestar-multiplier and percentage of the fund approaches for awarding reasonable fees
5    under applicable law." Righetti Decl. ¶ 22.  However, 25 percent of a common fund is the
6    benchmark for a reasonable award under the percentage-of-recovery method, and there must be
7    "adequate explanation in the record of any 'special circumstances' justifying a departure." *See*
8    *Bluetooth*, 654 F.3d at 942 (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,
9    1311 (9th Cir. 1990)).  Plaintiffs have provided no explanation, much less authority, justifying
10   deviation from this benchmark.  Further, under the lodestar method, counsel's requested fees
11   reflect a 1.28 multiplier of their $3,284,400 lodestar. Righetti Decl. ¶ 22.  While the multiplier is
12   on the low end of what is typical in this Circuit, *see Oliveira v. Language Line Services*, 22-cv-
13   02410-PCP, 2025 WL 586589, at *11 (N.D. Cal. Feb. 24, 2025) (collecting cases), and counsel
14   explains how the firm's lodestar was calculated, *see* Nathan Decl. ¶¶ 8-12, Nathan & Associates
15   has not justified or provided evidence of the reasonableness of its $1,050 billing rate.  Moreover,
16   no such information is provided regarding Righetti's rates and lodestar.  Because the Court will
17   award attorneys' fees at the final hearing, it need not deny the Motion on this basis, but cautions
18   the parties that at this stage they have not justified the attorneys' fees that they seek.
19           The second sign of collusion or fraud is when a settlement includes a "kicker" or "reverter"
20   clause providing that unawarded attorneys' fees be returned to the defendant, rather than the class.
21   *Briseño*, 998 F.3d at 1023.  Here, there is no possibility of reverter to M.A.C.  Settlement ¶ 45(b).
22   The third sign is where there is a "clear sailing" arrangement.  *Briseño*, 998 F.3d at 1023.
23   Although M.A.C. agrees not to oppose counsel's request for fees and costs, the fees will come
24   from the settlement fund, Settlement ¶ 4, so it is not a "clear sailing" arrangement, *Bluetooth*, 654
25   F.3d at 947 (noting a "clear sailing" arrangement is one in which payment of attorneys' fees is
26   "separate and apart from class funds, [carrying] 'the potential of enabling a defendant to pay class
27   counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf
28   of the class").  Finally, the parties participated in a full day of mediation with an experienced

mediator. Righetti Decl. ¶ 12. Though "not on its own dispositive," this "weigh[s] in favor of a finding of non-collusiveness." *Bluetooth*, 654 F.3d at 948.

### c. Fair and Adequate Terms

Rule 23(e)(2)(C) requires that the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; the terms of any proposed award of attorneys' fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3) (which requires that "the parties seeking approval must file a statement identifying any agreement made in connection with the proposal").

First, the proposed settlement amount is $12 million. Plaintiffs estimate the settlement represents 53.23 percent of the potential estimated exposure of $22,543,530.90. Mot. at 25. The average recovery per class member is estimated to be $2,271.86, with the highest potential individual award being $16,216.20. The comparator cases provided by Plaintiffs suggest that this settlement amount is significant. The average recovery per class member here is higher than most of the comparators provided, and this settlement represents the highest percentage of potential estimated exposure of all comparators. *See* ECF 75. Moreover, if the parties had not reached settlement, Plaintiffs would have faced risks, costs, and delays in pursuing further litigation, including entry of summary judgment in Defendant's favor or delay from a lengthy appeal process. *See Del Valle v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2025 WL 1651157, at *2 (N.D. Cal. June 10, 2025) (noting the settlement amount was fair in light of, among other things, the risk of years of appeals). Considering this settlement in light of comparable outcomes and the risks and costs of pursuing further litigation, the Court finds this settlement is fair and "within the range of reasonableness." *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (quoting *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014)).

Second, the proposed method of distributing relief to the class is effective. Notice will be distributed by first class mail, and skip tracing will be conducted prior to mailing as well as for any mail returned as undeliverable. Mot. at 17; Settlement ¶¶ 38, 56; *see Roberts v. Marshalls of*

1  *CA, LLC*, No. 13-CV-04731-MEJ, 2017 WL 3314994, at *20 (N.D. Cal. Aug. 3, 2017); *Adams v.*

2  *Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007) ("First class mail is ordinarily

3  sufficient to notify class members who have been identified."). Third, the Settlement imposes a

4  limit on the amount of attorneys' fees class counsel can request, and the terms of the award of

5  attorneys' fees do not suggest the relief provided to class members would be unfair or inadequate.

6  Finally, as required by Rule 23(e)(2)(C)(iv), the Settlement states that no other agreement has been

7  made in connection with the Settlement. *See* Settlement ¶ 76.

8  The Court thus concludes the relief provided for the class is adequate and next considers

9  whether the settlement treats the class members equitably.

### d. Equitable Treatment of Class Members

11  Rule 23(e)(2)(D), which requires that "the proposal treats class members equitably relative

12  to each other," is satisfied here, as the Settlement provides each class member will receive a pro-

13  rata share of the settlement fund that is directly proportional to the number of workweeks during

14  which they were employed by M.A.C. during the class period. Mot. at 15; Righetti Decl. ¶ 23; *De*

15  *La Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2017 WL 2670699, at *9 (N.D. Cal. June 21,

16  2017) (finding a pro rata distribution plan did "not favor certain Class Members over others");

17  *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *8 (N.D. Cal. June 10, 2015) (same).

18  However, Maciel and Torres have not justified their proposed service award of $20,000 for

19  each of them. Courts "must carefully consider the disparity created by incentive payments . . .

20  because 'excessive payments to named class members can be an indication that the agreement was

21  reached through fraud or collusion.' " *Wren v. RGIS Inventory Specialists*, No. C-06-5778 JCS,

22  2011 WL 1230826, at *31-32 (N.D. Cal. Apr. 1, 2011) (quoting *Staton v. Boeing Co.*, 327 F.3d

23  938, 975 (9th Cir. 2003)). Courts in this District "have indicated that . . . as a general matter,

24  $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL

25  381202, at *6-7 (N.D. Cal. Feb. 6, 2012). Maciel and Torres have presently not justified deviating

26  from the presumptively reasonable amount of $5,000. *See Wilson v. Tesla, Inc.*, No. 17-CV-

27  03763-JSC, 2019 WL 2929988, at *15 (N.D. Cal. July 8, 2019), *aff'd,* 833 F. App'x 59 (9th Cir.

28  2020) (collecting cases); *Cawthorne v. Rush Truck Centers of California, Inc.*, No.

9

EDCV171541JGBSPX, 2019 WL 13251925, at *9 (C.D. Cal. Mar. 18, 2019). Thus, while the Court can preliminarily conclude that the Settlement treats class members equitably, it does not approve the $20,000 incentive payments at this point, and is unlikely to award the requested amount at the final hearing absent additional evidence. *See Wilson*, 2019 WL 2929988, at *15 (reducing service award from $10,000 to $5,000 where $10,000 was "4.1 times greater than the average class member award"); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).

### B. Notice Plan and Final Approval Hearing

Where a court preliminarily approves a settlement, it must "direct notice in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1)(B). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Plaintiffs' proposed notice plan meets that standard, as the notice sufficiently informs class members of the Settlement's terms, their rights under the Settlement, the process for objecting and receiving payment, and the date and location of the final approval hearing. Righetti Decl. Ex. A (ECF 63-1) at 50-55. The notices will be sent by first-class mail, and the settlement administrator will search for updated addresses for any notices returned as undeliverable. Settlement ¶ 56. Plaintiffs obtained multiple bids from settlement administrators, and ultimately chose ILYM Group, Inc., which provided the most competitive bid of the three received. Righetti Decl. ¶ 9. Class counsel's firms have each worked with ILYM on several cases in the past two years, and counsel notes ILYM has "always faithfully and professionally handled its responsibilities." *Id.* The Court therefore appoints ILYM as the Settlement Administrator.

//
//
//

## II. CONCLUSION

For the foregoing reasons, the Court finds the Settlement falls within the range of possible approval as fair, adequate, and reasonable and that there is a sufficient basis for notifying the class and for setting a final hearing. Thus, the Court **GRANTS** the Motion and **ORDERS** as follows:

1. The Court preliminarily certifies the proposed class for settlement purposes pursuant to Rule 23(b)(3). A class member is defined as:

   > A person employed by M.A.C. in California as an hourly paid, non-exempt employee, at any time from April 27, 2018, to July 24, 2025.

   The Court appoints Ignacio Maciel and Ruth Torres as representatives for the Class and appoints Righetti Glugoski, P.C. and Nathan & Associates, APC as counsel for the Class.

2. The Court approves the text of the settlement notice, which is the proposed form of notice regarding the Settlement for mailing to class members.

3. The Court appoints ILYM Group, Inc. to serve as the Settlement Administrator.

4. By July 31, 2025, the parties shall submit proposed deadlines for the following:

   - Defendant to submit class list and data to the settlement administrator.
   - Settlement administrator to mail the class notice to class members.
   - Class members to submit opt-out or objections to the settlement administrator.
   - Class counsel to file (1) a motion for final approval of class action and PAGA settlement; and (2) a motion for award of class representative award, claims administrator's expenses, and attorneys' fees and costs.
   - Class members to object to the motions for final approval and the award of fees, expenses, and costs.
   - Class members to file a notice of intention to appear at the final hearing.
   - Hearing on the motions for final approval and award of class representative award, claims administrator's expenses, and attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: July 24, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**