Matthew Righetti (SBN 121012)
matt@righettilaw.com
John Glugoski (SBN 191551)
jglugoski@righettilaw.com
**RIGHETTI GLUGOSKI, PC**
2001 Union Street, Suite 400
San Francisco, California 94123
Telephone: (415) 983-0900

Reuben D. Nathan (SBN 208436)
rnathan@nathanlawpractice.com
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Highway, Suite 200
Newport Beach, CA 92663
Tel. No.: (949) 270-2798
Fax No.:   (949) 209-0303

Attorneys for Plaintiffs,
IGNACIO MACIEL, RUTH TORRES, and all others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO MACIEL, RUTH TORRES on behalf of themselves and all other similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>M.A.C. COSMETICS INC.; and DOES 1–50, inclusive,<br><br>Defendants. | Case No.: 3:23-CV-03718-AMO<br><br>[Assigned to Hon. Judge Araceli Martinez-Olguin]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND <u>UNOPPOSED</u> MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Hearing Date:    January 15, 2026<br>Time:             2:00 p.m.<br>Location:         Courtroom 10 |

1  **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       PLEASE TAKE NOTICE THAT on January 15, 2026, at 2:00 p.m. in Courtroom 10 of the

3  above-captioned court located at 450 Golden Gate Avenue San Francisco, CA 94102, Plaintiffs

4  Ignacio Maciel and Ruth Torres will, and hereby do, move for an Order granting Final Approval

5  pursuant to Fed.R.Civ P. 23(e).

6       This motion is made on the grounds that the settlement is fair, reasonable, and adequate

7  because it is the product of arm's-length, good-faith negotiations after significant litigation, given

8  the relative strengths and weaknesses of the claims and defenses, as well as the risks involved in

9  pursuing further litigation. This motion will be based upon this Notice, the accompanying

10 Memorandum of Points and Authorities, Declaration of Reuben D. Nathan, Declaration of Matthew

11 Righetti, Declaration of John Glugoski, Declaration of Cassandra Polites on behalf of ILYM Group,

12 Inc., class action settlement administrators, and Declarations of Plaintiffs Ignacio Maciel and Ruth

13 Torres, as well as the pleadings and papers on file herein and upon any other matters that may be

14 presented to the Court at the hearing.

15

16  Dated: November 17, 2025                    Respectfully submitted,

17

18                                              **RIGHETTI GLUGOSKI, P.C.**
                                                **NATHAN & ASSOCIATES, APC**
19
                                    By:    /s/ *John Glugoski*
20                                         John Glugoski
                                           Attorney for Plaintiffs
21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.   BACKGROUND ............................................................................................ 1

    A.    Overview of Case and Results. ...................................................................... 2

    B.    Class Member Recoveries Are 50% Higher On Average That Expected. ........... 4

    C.    The Next Step For the Court Is Grant Final Approval of the Class Action Settlement ......... 5

    D.    Parties and Representation ............................................................................. 5

    E.    Settlement Negotiations And Procedural History ............................................. 5

III.  SUMMARY OF SETTLEMENT TERMS ................................................... 6

IV.   STATUS OF NOTICE PROCEDURE ......................................................... 6

    A.    Notices Sent Out, Re-Mailed, And Inquiries Received: ................................... 6

    B.    Only Three Requests For Exclusion ............................................................... 7

    C.    No Objections ............................................................................................... 7

V.    FINAL SETTLEMENT APPROVAL IS APPROPRIATE .............................. 7

    A.    The Settlement Is Entitled To A Presumption Of Fairness .............................. 8

    B.    The Parties Reached The Settlement Through Arm's Length Negotiations. ....... 8

    C.    Substantial Discovery Facilitated Arm's-Length Negotiations ......................... 8

    D.    The Parties Have Reasonably Tailored Monetary Recovery To Each Class Member's
Claim .......................................................................................................... 9

    E.    Class Counsel Are Experienced And Endorse The Settlement .............................

VI.   CONCLUSION ............................................................................. 10

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

*Boyd*, *supra*,

485 F. Supp. at 616-17 ........................................................................... 9

*Dunk v. Ford Motor Company*,

(1996) 48 Cal.App.4th 1794 ............................................................... 7, 8

*Ellis*,

*supra,* 87 F.R.D. at 18 ......................................................................... 9

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*,

630 F. Supp. 482 (E.D. Pa. 1985) ........................................................ 9

*Malibu Outrigger Bd. of Governors. v. Superior Court*,

(1980) 103 Cal.App.3d. 573 ................................................................ 8

*Mallick v. Superior Court*,

(1979) 89 Cal.App.3d 434 ................................................................... 8

*Officers for Justice v. Civil Service Com.*,

(9th Cir. 1982) 688 F.2d 615, cer. denied (1983) 459 U.S. 1217 .................... 7, 8

<u>Statutes</u>

Cal. Code. Civ. Proc. § 382 .............................................................. 7

Cal. Code. Civ. Proc. § 1781(f) ........................................................ 7

Cal. Labor Code § 226 .................................................................... 2

Cal. Labor Code § 2698 *et seq.* ...................................................... 5

Cal. Labor Code § 2802 .................................................................. 2

Fed. R. Civ. P. 23(e)....................................................................... 7

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3      This case has been pending for more than 3 years.[1] The parties reached a fair, reasonable,

4  and equitable result in this case as embodied in the settlement agreement which was previously

5  preliminarily approved by this Court. The settlement provides monetary benefits to both the State

6  of California and 3,433 participating Class Members. Both the State of California and the Class

7  Members (i.e., non-exempt store employees from April 27, 2025, through and including July 24,

8  2025) were provided notice of the settlement terms and the deadlines to either object or opt-out.[2]

9      The deadline to opt out or object to the settlement was October 17, 2025.

10      Of the 3,436 putative Class Members, there is a 99.9% participation rate (i.e., 3,433

11  participating Class Members, no objections and 3 Requests for Exclusion). There are no disputes

12  submitted by any Class Member concerning their dates of employment or number of workweeks

13  worked during the class period. (Declaration of Cassandra Polites, ILYM Group Inc., claims

14  administrator ¶¶ 6 & 11).

15      The results achieved through this settlement provide just and reasonable compensation to

16  the Class Members in light of the claims litigated and the defenses asserted by Defendant. Thus,

17  Plaintiffs submit that the goals sought to be achieved when this litigation was initiated have been

18  achieved.

19      The proposed settlement of this action is fair, reasonable, and adequate and in the best

20  interests of the Class. Accordingly, the Court should have no hesitation granting final approval.

21      Plaintiffs request that the Court do the following:

22  
_____

23  [1]    Class Counsel originally filed this matter in the San Francisco Superior Court on April 27, 2022.
24  Defendant's initial removal attempt was unsuccessful and the matter was remanded back to the superior court. Later in the litigation Defendant initiated another effort and successfully removed this matter to this
25  Court. The parties engaged in extensive litigation in both state and federal court and Class Counsel engaged in an in-depth analysis of the value of the claims at issue prior to and following the filing the lawsuit,
26  including interviewing class members.

27  [2]    At the time of settlement negotiations and preliminary approval, the class size was estimated to be 5,282 Class Members. The actual class size is 3,433 Class Members. Accordingly, the average net recovery
28  for the Class Members has increased by 50% from $1,378.45 to $2,120.89 from what was provided in the Class Notice.

i.  Grant final approval including the requests for attorneys' fees, litigation

costs, administration costs and the Class Representative enhancements; and

ii. Though none are foreseen at the present time, resolve any class member

issues that may come up at the hearing.

## II.  BACKGROUND

### A.  Overview of Case and Results

This settlement seeks resolution of a class action filed against Defendant on April 27, 2022, on behalf of:

All persons currently or previously employed by M.A.C. in California as an hourly paid, non-exempt employee, at any time from April 27, 2018, to the date of the Court's order preliminarily approving this Settlement (July 24, 2025) (referred to herein as "Class Members", "California Class" or "Settlement Class")

As set forth in the Motion for Preliminary Approval, on January 16, 2025 (Dkt. 63), Plaintiffs Maciel and Torres filed this lawsuit ("Maciel Action") as a proposed class action complaint in the San Francisco Superior Court. It was removed to this Court after two attempts. The *Maciel* action contends MAC had uniform policies and practices that (a) failed to properly include eligible wages in the regular rate when calculating overtime pay under California law, (b) failed to pay for the time store employees prepared for work (hair and makeup) per a MAC Image policy, (c) failed to pay for dress code expenses under Labor Code 2802, (d) failed to provide required wage statement information pursuant to California Labor Code Sec. 226, and (e) failed to pay all wages owed at termination pursuant to Labor Code Sec. 203. Plaintiffs seek both damages for the putative class and penalties on behalf of the State of California for Labor Code violations pursuant to the Private Attorneys' General Act ("PAGA"). (Dkt. 36, Third Amended Complaint ("TAC")).

As explained in connection with the Motion for Preliminary Approval (Dkt. 63-1), Plaintiffs engaged in extensive formal and informal discovery to investigate the claims alleged in the action. After obtaining contact information for putative Class Members, Class Counsel

interviewed putative Class Members who were willing to discuss their experiences. This process included obtaining dozens of authorizations directing MAC to release personnel/employee and payroll files for putative Class Members. These efforts resulted in the disclosure of key evidentiary corroboration of Plaintiffs' contentions. During pre-certification discovery in state court, Plaintiffs served multiple sets of written discovery including multiple sets of Special Interrogatories and Requests for Production of Documents. Plaintiffs also conducted depositions of key witnesses.

When Defendant removed to federal court for a second time, Plaintiffs complied with their FRCP Rule 26 disclosure obligations, served additional written discovery, and convened depositions of a) individuals who were identified by MAC's Rule 26 disclosures, and b) witness-designees identified by MAC under FRCP Rule 30(b)(6). While discovery was hard-fought, after lengthy meet and confer efforts, MAC was required to produce an extensive array of information showing policies and procedures, bonus plans, personnel data and files, compensation agreements, wage statements, and other documents. MAC also produced extensive payroll data (i.e., employee start and end dates, payroll data going back the entire statutory period, commission/bonus data, salary and overtime information, and hours worked per day and/or week, for all putative Class Members covering the class period). All this information was analyzed in depth by Class Counsel and Plaintiffs' experts to determine both the risks and the extent of potential liability based on the contentions. See Dkt. 63-1, Declaration of Matthew Righetti pages 4-10 detailing the work performed in this case.

Once Plaintiffs had obtained the discovery noted above, the parties agreed to mediation. The Parties participated in a full-day of mediation with Jeff Ross, a well-respected labor and employment mediator. The case did not settle at mediation. The Parties continued to litigate the case while continuing to negotiate through the mediator. As the matter proceeded closer to class certification the Parties eventually reached an agreement based on a mediator's proposal made by Mr. Ross.

This Court previously preliminarily determined that the settlement is a fair, reasonable, and adequate resolution of the Class Claims. The Court's preliminary approval order directed that the Administrator to provide the court-approved notice to the Class Members. [Dkt. 77 p. 11]. That

3

process has been completed in accordance with the Court's order and the Parties' settlement agreement. (See Decl. of Cassandra Polites of ILYM). Now that the notice process is complete, Plaintiffs request that the Court grant final approval to the settlement and enter a judgment in accordance with the terms of the settlement.

**B. Class Member Recoveries Are 50% Higher On Average Than Expected**

As of this date, there are 3,433 Class Members who worked a total of 202,101 work weeks and who did not submit a timely and valid Request for Exclusion (i.e., participating Class Members). Decl. of Cassanda Polites of ILYM ¶ 15. The Individual Class Payment is allocated on a pro rata basis using each employee's weeks worked during the class period.

The *highest* individual Class payment to a participating Class Member is currently estimated to be approximately $13,401.87, while the *average* individual Class payment is currently estimated to be approximately $2,120.89 and the *lowest* individual Class payment is currently estimated to be approximately $36.03. Decl. of Cassandra Polites of ILYM ¶ 16.

At the time of the filing of the Motion for Preliminary Approval, the average net Class Member award was expected to be approximately $1,378.45. Dkt. 63 p. 16. At that time, the Court noted, "The average recovery per class member here is higher than most of the comparators provided, and this settlement represents the highest percentage of potential estimated exposure of all comparators." (Dkt. 77 p. 8) At the time of preliminary approval, Plaintiffs had estimated the workweeks to be in the range of 269,334. As it turns out, the workweeks are 25% <u>lower</u> (i.e., 202, 101). This raises the average net recovery for Class Members from $1,378.45 to $2,120.89. This equates with a 50% increase in the average recovery (i.e., an additional $742.44 per Class Member). The Court noted on page 8 [Dkt.77] in the Order granting preliminary approval dated July 24, 2025, that the settlement amount, which was based on 5,282 employees appeared to be "significant" to Class Members based on comparative cases presented to the Court. This 50% increase (on average) in recovery to Class Members emphasizes the exceptional results achieved in this litigation.

///

///

///

1

**C.  The Next Step For the Court Is Grant Final Approval of the Class Action Settlement**

In its preliminary approval order, the Court appointed ILYM Group. Inc. as the third-party claim administrator ("Claims Administrator") and approved a comprehensive notice program for dissemination to the Class Members. See ¶ 9, Declaration of J. Glugoski.

Defendant provided the Claims Administrator with the names, last known mailing addresses, and relevant dates of employment of the 3,436 Class Members. The Claims Administrator commenced mailing by sending the notice packets to the 3436 Class Members on September 2, 2025. See ¶ 7, of the Decl. of Cassandra Polites of ILYM.  The opt out and objection deadline was October 17, 2025.  As noted above, no Class Member objected and only three members of the Class submitted timely opt-out forms. See ¶ 11, Decl. of Cassandra Polites.

**D.  Parties And Representation**

Matthew Righetti and John Glugoski of Righetti Glugoski, P.C. and Reuben Nathan of Nathan & Associates, APC represent Plaintiffs. Allison Wallin and Peter Prynkiewicz of Littler Mendelson, P.C. represent Defendant, MAC.

**E.  Settlement Negotiations And Procedural History**

This case has been vigorously litigated by the parties. The *Maciel* Action was filed on April 27, 2022, and alleged claims under the California Labor Code, and the Private Attorney General Act, California Labor Code § 2698 *et seq.* ("PAGA), on behalf of groups of current and former non-exempt employees as set forth above.

Prior to filing the initial complaint and during throughout the litigation, Class Counsel diligently pursued an investigation of the claims of Class Members against Defendant. There has been a considerable amount of formal and informal investigation by both parties (See Dkt. 63-1). Over the course of this litigation, the parties have obtained an abundance of information to assist them in properly analyzing their respective positions. This investigation has afforded both sides with ample opportunity to evaluate the veracity and probable success of the class and individual claims. Counsel for the Parties have further invested extensive time investigating the applicable law as it relates to class certification, Plaintiffs' liability claims and damages, and the defenses thereto. See ¶ 10, Declaration of J. Glugoski.

Class Counsel submits that the settlement that has been reached is a fair, reasonable, and adequate resolution of the alleged claims, as it provides required compensation for the actual violations Class Counsel believes occurred based on their analysis of Defendant's records, plus additional amounts for interest, penalties and waiting time penalties, which the parties compromised in light of Defendant's defenses. Accordingly, Plaintiffs request that the Court enter an Order finally approving the settlement to effectuate payment to Class Members.

## III. SUMMARY OF SETTLEMENT TERMS

The total settlement value is as follows: 1) Twelve Million Dollars and No Cents ($12,000,000.00) shall be allocated to the Class. The net settlement amount for the Class is calculated by deducting from Defendant's maximum total payment of Twelve Million Dollars and No Cents ($12,000,000.00) ("Total Settlement Amount"), attorneys' fees and costs of $4,200,000.00, the amount allocated for litigation costs and expenses $150,000.00, the requested Class Representative Service Payment $40,000.00, the requested Administration Expenses Payment $29,000.00, the LWDA Payment $225,000.00 and the PAGA Penalties allocation to Aggrieved Employees $75,000.00 from the Gross Settlement Amount $12,000,000.00.[3] See ¶ 14 Declaration of Cassandra Polites.

## IV. STATUS OF NOTICE PROCEDURE

### A. Notices Sent Out, Re-Mailed, And Inquiries Received:

Pursuant to the Court's preliminary approval Order, on September 2, 2025, the Claims Administrator, mailed, via first class mail, the Class Notice Packet Notice to each Class Member at his/her last known address.[4] (Polites Decl. ¶¶ 6-10).

A declaration and report from the Claims Administrator along with an analysis of the claims process in this matter is submitted concurrently with these papers. (See, Polites Decl.).

Since mailing the Notice Packets to the Class Members, two hundred ninety (290) Notice

---

[3] The LWDA has been provided notice of the settlement and this motion. See, Ex. 2 to the Declaration of J. Glugoski, confirming the submission of the settlement to the LWDA.

[4] The mailing was accomplished after running Defendant's data through the National Change of Address (NCOA) database to obtain any recent address updates.

Packets were returned to ILYM, two hundred thirty-one (231) Notice Packets were re-mailed after returned mail and skip tracing with forwarding addresses, and sixty-four (64) Class Members were deemed to have undeliverable addresses. The deadline to submit objections, requests for exclusion, and opt-in forms was on October 17, 2025. (See ¶ 11 Decl. of Cassandra Polites of ILYM Group, Inc.)

### B.    Only Three Requests For Exclusion

As of the date of this submission, three (3) requests for exclusion have been received. (See ¶ 11 Decl. of Cassandra Polites of ILYM Group, Inc.)  The deadline to opt-out expired on October 17, 2025.

### C.    No Objections

As of the date of this submission, no objections have been received. (See ¶ 12 Decl. of Cassandra Polites of ILYM Group, Inc.) The deadline to object expired on October 17, 2025. The lack of any objection to a large settlement involving thousands of Class Members is remarkable and highlights that the results achieved here are exceptional.

## V.    FINAL SETTLEMENT APPROVAL IS APPROPRIATE

Pursuant to both state and federal rules of civil procedure, "a class action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. . . " (CCP § 1781(f); Fed. R. Civ. P. 23(e).). In deciding whether to grant final approval of a proposed class action settlement under CCP § 382, the court's overriding concern is whether the proposed settlement is "fair, adequate, and reasonable." (*Dunk v. Ford Motor Company* (1996) 48 Cal.App.4th 1794, 1801 (quoting *Officers for Justice v. Civil Service Com.* (9th Cir. 1982) 688 F.2d 615, 625, cer. denied (1983) 459 U.S. 1217).)

In practical terms, the settlement of a class action follows three parts: 1) Preliminary approval of the proposed settlement; 2) Notice to Class Members, and 3) A Final Approval hearing or "Fairness Hearing" at which evidence and argument may be heard on the fairness, adequacy, and reasonableness of the settlement. The Court has given preliminary approval of the settlement and Notice has been delivered to all Class Members by mail.

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
AND PAGA SETTLEMENT

1    **A.    The Settlement Is Entitled To A Presumption Of Fairness.**

2        A presumption of fairness exists where: 1) The settlement is reached through arm's length

3    bargaining; 2) Investigation and discovery are sufficient to allow counsel and the court to act

4    intelligently; 3) Counsel are experienced in similar litigation; and 4) The percentage of objectors is

5    small. (*Dunk v. Ford Motor Company, supra*, 48 Cal.App.4th at 1802.)

6        To prevent fraud, collusion, or unfairness to the class, the settlement or dismissal of a class

7    action requires court approval. (*Malibu Outrigger Bd. of Governors. v. Superior Court* (1980) 103

8    Cal.App.3d. 573, 578-579.) The purpose of the requirement is the protection of those class members,

9    including the named plaintiff, whose rights may not have been given due regard by the negotiating

10   parties. (*Officers for Justice v. Civil Service Com., supra*, 688 F.2d at 624.)  The trial court has broad

11   powers to determine whether a proposed settlement in a class action is fair. (*Mallick v. Superior*

12   *Court* (1979) 89 Cal.App.3d 434.)

13       At the Final Approval Hearing, the Court should consider the relevant factors, such as the

14   strength of the plaintiff's case, the risk, expenses, complexity and likely duration of further litigation,

15   the risk of maintaining class action status through trial, the amount offered in settlement, the extent

16   of discovery completed and the stage of the proceedings, the experience and views of counsel, the

17   presence of a governmental participant and the reaction of the Class Members to the proposed

18   settlement. (*Officers for Justice v. Civil Service Com., supra*, 688 F.2d at 624.) "This list is not

19   exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a

20   private consensual agreement between the parties." (*Dunk v. Ford Motor Company, supra*, 48

21   Cal.App.4th at 1801.)

22   **B.    The Parties Reached The Settlement Through Arm's Length Negotiations.**

23       During all settlement discussions, the parties conducted their negotiations at arms' length

24   with the assistance of a neutral mediator, and, in spite of a mutual desire to resolve the case, always

25   in an adversarial manner. The parties have been able to construct a settlement that, given the

26   constraints and realities of the case, is fair, reasonable, adequate, and in the best interests of the Class.

27   **C.    Substantial Discovery Facilitated Arm's-Length Negotiations.**

28       The parties provided descriptions of the litigation events, the discovery conducted, and

information exchanged as part of the preliminary approval submissions. Both sides had the opportunity to compile and review extensive documentation relating to policy and practice changes, record keeping, premium payments made, hourly rates, and work history for class members in an effort to determine the potential value of the claims. See Declaration of M. Righetti and Declaration of Reuben Nathan filed in support of Motion for Preliminary Approval.

The available information has made it possible to estimate the potential claim of each Class Member and in fact provide a meaningful remedy that fairly approximates the damages resulting from the alleged violations. Sufficient investigation and discovery have been conducted for the parties to be sufficiently informed of the nature and extent of the Class Claims, and to enable both sides to evaluate fully the proposed settlement for its fairness, adequacy, and reasonableness in light of the circumstances.

### D. The Parties Have Reasonably Tailored Monetary Recovery To Each Class Member's Claim.

The essential terms of the monetary settlement between Plaintiffs and Defendant provides for the payment of restitution and damages to each Class Member according to the number of weeks each Class Member was employed as an hourly paid employee during the class period. The parties have reasonably tailored the settlement to each Class Member's claim for compensation in that the parties based the settlement on the number of weeks worked in the position covered by the action during the statutory time covered by the case.

### E. Class Counsel Are Experienced And Endorse The Settlement.

The proposed settlement is endorsed by the attorneys involved.  As the courts have explained, the view of the attorneys actively conducting the litigation is "entitled to significant weight." (*Fisher Bros. v. Cambridge-Lee Industries, Inc.* 630 F. Supp. 482, 488 (E.D. Pa. 1985); see also *Ellis*, *supra*, 87 F.R.D. at 18; *Boyd*, *supra,* 485 F. Supp. at 616-17.)

Class Counsel have decades of experience not only in class actions and employment litigation, but also specifically in wage and hour class actions. Declaration of J. Glugoski ¶¶ 2-7. Thus, the experience of the Class Counsel makes them qualified to evaluate the class claims and viability of the defenses. Declaration of J. Glugoski ¶ 7.

The recovery for each Class Member is on fair and reasonable terms – taking into consideration the amounts received, the risks inherent in litigation of this genre as discussed in detail in the Preliminary Approval motion, and the reasonable tailoring of each Class Member's claim to the potential value of each claim. This settlement is fair, adequate, reasonable, and in the best interests of the Class. Decl. of J. Glugoski ¶ 11.

In addition, this Court should approve the settlement of the PAGA claims by the Class as fair and reasonable, and direct the Administrator to pay all members of the Class their prorated 25% share of the PAGA award, and to pay the California Labor and Workforce Development Agency its 75% share of the PAGA award. Notice has been duly provided to the State of California pursuant to the PAGA.  There has been no response from the State of California.

## VI.    CONCLUSION

The Settlement Agreement provides substantial benefits to the Class Members that are fair, reasonable, and adequate. The final approval meets the standard required for the Court to grant final approval. Accordingly, Class Counsel respectfully requests that the Court grant final approval of the Settlement and enter judgment accordingly.

Dated: November 17, 2025                    Respectfully submitted,

                                            **RIGHETTI GLUGOSKI, P.C.**
                                            **NATHAN & ASSOCIATES, APC**

                                     By:    _/s/ John Glugoski_
                                            John Glugoski
                                            Attorney for Plaintiffs

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT