UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IGNACIO MACIEL, et al., | Case No. 23-cv-03718-AMO |
| Plaintiffs, | |
| v. | **ORDER AWARDING ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARDS** |
| M.A.C. COSMETICS INC., | |
| Defendant. | Re: Dkt. No. 81 |

On January 15, 2026, this Court held a Final Approval Hearing to determine whether the terms and conditions of the Class Action Settlement Agreement and Release ("Settlement") agreed to by named Plaintiffs Ignacio Maciel and Ruth Torres and Defendant M.A.C. Cosmetics, Inc. ("MAC") should be approved by the Court. At the Final Approval Hearing, the Court also considered Plaintiffs' motion for attorney's fees and costs, class representative enhancements, and settlement administrator's expenses. *See* Dkt. No. 81. Having read the unopposed papers filed by Plaintiffs and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the requests in part for the following reasons.

## I.      DISCUSSION

For purposes of this Order, the Court assumes familiarity with the factual and procedural background of this wage and hour class action, including the Court's preliminary approval of a $12 million common fund settlement reached prior to class certification. *See* Dkt. No. 77. The Court takes up Plaintiffs' requests for an award of costs, incentive awards, and attorney's fees in turn.

United States District Court
Northern District of California

**A.      Costs Awards**

Plaintiffs seek to deduct two forms of costs from the common settlement fund: litigation costs incurred by counsel and settlement administration costs.

**1.      Litigation Costs**

Class counsel may recover reasonable out-of-pocket expenses.  Fed. R. Civ. P. 23(h). Reasonable out-of-pocket litigation expenses are those that "would normally be charged to a fee paying client."  *Trs. of the Const. Indus. and Laborers Health and Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006).  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."  *Rutti v. Lojack Corp., Inc.*, No. SACV 06-350 DOC, 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012). "Courts also have discretion to reimburse consulting and expert witness fees."  *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017).

Here, Plaintiffs' counsel seek to recover a total of $40,394.93 in costs, including $13,236.02 to the law firm Nathan & Associates and $27,158.91 to the law firm Righetti Glugoski.  Nathan Decl. ¶¶ 29, 34; Righetti Decl. ¶ 21 & Ex. 3, Glugoski Decl. ¶ 29.  At the hearing, counsel was unable to describe with any detail the source or output of the $2,045.46 expenditure described as "Investigation," *see* Righetti Decl., Ex. 3 (Dkt. No. 82-3), and the Court accordingly finds that cost unsubstantiated.  Counsel provided even less context for the $6,377.25 expenditure described as "Experts/Consultants (trial plan)," and the Court finds that cost unsubstantiated.  Counsel may not recover these two line items of unsubstantiated expenses.  The Court finds the remaining litigation expenses incurred to be reasonable and sufficiently described, and the Court accordingly grants counsels' requests to recover their litigation costs in the amounts of $13,236.02 to the law firm Nathan & Associates and $18,736.20 to the law firm Righetti Glugoski.

### 2.    Settlement Administration Costs

Courts regularly award costs associated with the administration of class settlements, including notice and payment. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *11 (N.D. Cal. Dec. 15, 2022) (citing *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015)). As set forth in the Polites Declaration, the total costs incurred and anticipated to be incurred by ILYM Group, Inc. ("ILYM") for the notice and settlement administration process are $29,000.00. Polites Decl. ¶ 19. The Court concludes that the settlement administrator's costs were reasonably incurred for the benefit of the class and approves the full amount to be deducted from the common settlement fund. Accordingly, the Court grants payment to ILYM, a necessary third-party for handling of the notice and settlement payment process, in the amount of $29,000.00.

### B.    Incentive Award

Plaintiffs request service payment of $20,000 to named Plaintiffs Ignacio Maciel and Ruth Torres. *See* Dkt. No. 81 at 1. "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citations omitted). Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). District courts must carefully scrutinize the reasonableness of a proposed incentive award by analyzing factors including, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citations and quotations omitted). "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe*, 715 F.3d 1157, 1164 (9th Cir. 2013). Service awards of $5,000 are considered "presumptively reasonable" in this district. *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020). "Incentive awards are

United States District Court
Northern District of California

3

particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citing *Rodriguez*, 563 F.3d at 958-59).

At the preliminary approval stage, the Court warned that it was unlikely to approve Plaintiffs' request for incentive awards at the requested amount of $20,000 each. *See* Dkt. No. 77 at 9-10. In the instant motion, Plaintiffs highlight several outlier, out-of-circuit cases in which courts granted service awards ranging from $75,000 to $425,000. *See* Dkt. No. 81 at 23-24 (citing, e.g., *McReynolds v. Merrill Lynch*, No. 1:05-cv-6583 (N.D. Ill. Dec. 6, 2013); *Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *26 (S.D.N.Y. Nov. 30, 2010)). But Plaintiffs do not meaningfully compare such cases to the circumstances here, leaving such large incentive awards completely disconnected from the facts of this case. Perhaps more significantly, because Plaintiffs cite only these exorbitant service awards, they fail to acknowledge this district's presumptively reasonable standard of $5,000 and thus provide little reasoning to depart from that standard in this case. That said, Maciel and Torres declare that they devoted significant effort to serving as class representatives, including by reviewing legal filings, participating in written discovery, preparing and sitting for depositions, and attending the mediation session in person. Maciel Decl. (Dkt. No. 86) ¶¶ 10-19; Torres Decl. (Dkt. No. 87) ¶¶ 5-17. Maciel certifies that he devoted at least 200 hours to the case. Maciel Decl. ¶ 20. Torres certifies that she devoted at least 150 hours to the case. Torres Decl. ¶ 18. The Court finds that substantial incentive awards are appropriate here in light of the time and effort Maciel and Torres expended for the benefit of the class, including the risk to their employment as well as the risks associated with initiating the litigation and representing the class. Moreover, Maciel and Torres executed general releases of all claims beyond those litigated in this class action, and such broad releases further support a substantial incentive award. Maciel and Torres diligently fulfilled their duties as class representatives; however, the Court is unconvinced that these efforts justify such a substantial departure from the presumptively reasonable award of $5,000, particularly given the moving papers' failure to acknowledge that foundational starting point. The Court will therefore grant

Plaintiffs' request for incentive awards but adjust the awards to $10,000 each to match the circumstances of this case.

### C.      Attorney's Fees

Class counsel seeks an attorney fee award of 35% of the common fund, a sum of $4.2 million. *See* Dkt. No. 81 at 9.  Attorney's fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h).  To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  Courts analyze an attorney's fee request "based on either the 'lodestar' method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief." *In re Apple Inc. Sec. Litig.*, No. 4:19-CV-02033-YGR, 2024 WL 4246282, at *5 (N.D. Cal. Sept. 18, 2024).  The Ninth Circuit encourages courts to calculate attorney's fees under both methods in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-1052 (9th Cir. 2002)).  Therefore, the Court analyzes class counsel's requested attorney's fees under the percentage-of-recovery method and cross-checks with the lodestar method to ensure reasonableness.

### 1.      *Viscaino* Factors

When using the percentage-of-recovery method, courts consider a number of factors, but the determination of an appropriate percentage requires careful consideration of all of the circumstances of a case. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).  The Ninth Circuit has characterized 25% of a common fund as the "benchmark" for the analysis and simultaneously noted that 25% may not be fitting in all cases. *Vizcaino*, 290 F.3d at 1047-48.  Courts should deviate from the benchmark when it would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Where district courts depart from the 25% benchmark rate, they must provide "adequate explanation in the record of any 'special

5

circumstances.' " *In re Bluetooth*, 654 F.3d at 942. In the end, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has identified five factors which may be probative: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-50.

Here, Plaintiffs seek an upward departure to 35% of the common fund for a total of $4,200,000 in attorney's fees. Dkt. No. 81 at 9. The Court takes up the *Vizcaino* factors in turn to assess whether such a significant upward adjustment is appropriate.

### a.    The Results Achieved

First, the Court considers the overall result and benefit to the Class. This factor is "the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that "the most critical factor" in determining the reasonableness of an attorneys' fees request is "the degree of success obtained").

The proposed settlement provides a gross non-reversionary settlement amount of $12,000,000 to approximately 3,433 class members. At the time of the filing of the motion for preliminary approval, the average net class member award was expected to be approximately $1,378.45. Dkt. No. 63 at 16. The Court noted, "[t]he average recovery per class member here is higher than most of the comparators provided, and this settlement represents the highest percentage of potential estimated exposure of all comparators." Dkt. No. 77 at 8. At the preliminary approval stage, Plaintiffs estimated the workweeks to be around 269,334, but in subsequent calculations, they have determined that the workweeks total approximately 202,101. Based on this revised number, and assuming an attorney fee award of 35% of the common fund, Plaintiffs calculate an estimated average individual payment of approximately $2,120.89 per class member. The monetary recovery for the class members represents a significant result for the class members.

United States District Court
Northern District of California

#### b.    The Risks of Litigation

The Ninth Circuit recognizes that risk is an important factor in determining a reasonable fee award.  *See In re Omnivision*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").  Courts should not only consider the recovery obtained for the class, but also the risks taken by class counsel in pursuing litigation.  *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (holding fees justified "because of the complexity of the issues and risks.").  Uncertainty is relevant in determining risk.  *See Vizcaino*, 290 F.3d at 1048.

Here, class counsel took considerable risk because of the complexity of issues and uncertainty of recovery.  *See, e.g.*, Glugoski Decl. ¶ 11 (identifying procedural and substantive risks to classwide success).  The risks involved, among other things, certification issues, pleading and proof issues, motion practice, and prevailing at trial.  *Id.*  Accordingly, class counsel's risk, combined with the significant result achieved on behalf of the class, supports the requested fees.

#### c.    The Skill Required and the Quality of the Work

The skill of counsel is a relevant factor to consider when awarding attorney's fees.  *See In re Omnivision*, 559 F. Supp. 2d at 1047.  Here, class counsel attest that they have extensive experience in wage and hour class action litigation as well as other complex litigation.  *See* Nathan Decl. (Dkt. No. 56) ¶¶ 24-27, Righetti Decl. (Dkt. No. 44-1) ¶¶ 1-7, Glugoski Decl. (Dkt. No. 88) ¶¶ 2-7.  However, such experience is difficult to credit fully in light of certain deficiencies in counsel's practice in the instant matter.  Plaintiffs' counsel sought to shortcut the Court's determination of the application for preliminary approval of class settlement and, in so doing, emphasized that the motion for preliminary approval was unopposed by Defendant.  *See* Dkt. No. 66.  Such a request, seeking speedy resolution at the expense of a thorough vetting of the proposed settlement by the Court as required under Rule 23(e), demonstrates a lack of foundational knowledge of the class action mechanism and undermines counsel's claimed skill and expertise.  Further still, class counsel demonstrates a lack of skill by failing to acknowledge or distinguish the presumptive 25% benchmark for attorney's fees set by the Ninth Circuit and reiterated in the

United States District Court
Northern District of California

7

Court's order granting preliminary approval. *See* Dkt. No. 77 at 7. These aspects of class counsel's representation significantly undermine their request for an award of 35% of the common fund.

### d. The Contingent Nature of the Representation

A determination of an attorney's fee award must also include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement. *See In re Omnivision*, 559 F. Supp. 2d at 1047. "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Id.* "[A]ttorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051.

Here, the contingent nature of this action supports a significant fee award for counsel. Class counsel have litigated this case for over three years on a contingency basis assuming significant risk of no recovery at all.

### e. Awards in Similar Cases

In applying the percentage-of-recovery method, a court should assess fee awards in similar cases. *See Vizcaino*, 290 F.3d at 1049-50. Plaintiffs identify in their motion a handful of cases in support of their theory that courts may award fees in a range of 20% to 50% of a common fund settlement. *See* Dkt. No. 81 at 13-14 (listing cases primarily from the Southern District of California). Only one of the cases cited is a wage and hour class action. *See id.* at 14 (citing *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *16 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011)). That case does not help Plaintiffs' counsel as much as they would like because, in light of the significant time and effort expended litigating the case, the court found the lodestar calculation of fees more appropriate and only accepted the percentage calculation in light of the herculean litigation efforts. *See Wren*, 2011 WL 1230826, at *28 (acknowledging that over the course of the four-year litigation, "Counsel conducted extensive discovery, took and/or defended 64

*United States District Court*
*Northern District of California*

depositions, responded to and propounded written discovery, successfully moved to compel discovery withheld by RGIS, defended against RGIS's motion to dismiss, successfully moved to certify the national FLSA class and Rule 23 classes in four states, successfully opposed RGIS's motions to decertify the classes, opposed RGIS's summary judgment motion, and participated in mediation sessions that ultimately led to the settlement of this case and relief for the classes."). The court's award in *Wren* thus serves as a poor comparator because class counsel here cannot be said to have devoted the same level of effort. In light of counsel's failure to put before the Court an award in similar wage and hour cases supporting an upward deviation so far above the 25% benchmark, the Court finds this factor weighs against class counsel's requested 35% award from the common fund.

### f. *Vizcaino* **Factors Conclusion**

Taking all these factors together, and recognizing the substantial award earned on behalf of the class, the Court concludes that class counsel has not established that they are entitled to an award of 35% of the common fund. The Court recognizes that class counsel achieved strong results for class members. But the significant payout is undercut by counsel's effort to avoid the Court's due scrutiny of the settlement at the preliminary approval stage, and it is further weakened by the failure to identify similar awards in similar cases. On balance, the Court finds that class counsel is entitled to an award of the benchmark, or 25% of the common fund.

### 2. **Lodestar Cross-Check**

The Court now compares the benchmark amount to the lodestar, as calculation of this amount, "which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). The Court takes up these two elements of reasonable hourly rates and reasonable hours expended in turn before crunching the numbers.

//

//

9

United States District Court
Northern District of California

#### a.    Reasonable Rate

"The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services." *Cotton v. City of Eureka*, 889 F.Supp.2d 1154, 1167 (N.D. Cal. 2012) (internal quotation marks and citation omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015) (internal quotation marks omitted); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("prevailing market rate" is "normally deemed to be reasonable"). "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citation omitted).

Here, Righetti declares his hourly rate is $1,200, Glukoski declares his hourly rate is $900, and Nathan declares his hourly rate is $1,050. *See* Righetti Decl. ¶ 11; Glukoski Decl. ¶ 19; Nathan Decl. ¶ 30. The hourly rates sought, however, do not match the quality of the work performed in this action.

In support of their claimed hourly rates, Plaintiffs' counsel rely on (1) a chart of hourly rates charged by the law firm Sidley Austin in Southern California, *see* Righetti Decl. ¶ 7, *see also id.*, Ex. 1 (Dkt. No. 82-1), (2) the Laffey Matrix, a survey of rates approved in the Washington/Baltimore legal market, Righetti Decl. ¶ 13, and (3) counsel's own experience learning of hourly rates in the course of practice, *id.* ¶ 14. The Court finds these sources unhelpful in assessing the reasonableness of class counsel's claimed hourly rates because they do not relate to the relevant community, nor do they reflect rate determinations found reasonable and actually

awarded by another court.[1]  *Cf. United Steelworkers*, 896 F.2d at 407.  Indeed, class counsel fails to cite a single order in which a court awarded any of them attorney's fees, much less at the rates requested.

The Court thus turns to review orders identifying hourly rates approved by other judges in the Northern District.  In one recent case, the court found rates ranging from $575 to $1,495 per hour within the range of rates approved in wage and hour litigation in this district, particularly where those hourly rates were supported by counsel's demonstration that they had been awarded such rates in similar cases.  *Koeppen v. Carvana, LLC*, No. 21-cv-01951-TSH, 2024 WL 3925703, at *12-13 (N.D. Cal. Aug. 22, 2024).  Even more recently, the court approved rates ranging from $475 to $550 for associates, and $625 to $950 for senior counsel and partners in a wage and hour class action.  *Rodriguez v. Belfor USA Grp., Inc.*, No. 22-CV-02071-VKD, 2025 WL 2899211, at *12 (N.D. Cal. Oct. 9, 2025).  The instant case is more like *Rodriguez* and less like *Koeppen* in light of class counsel's failure to substantiate the reasonableness of their hourly rates via citation to a case in which they received the requested rates.  The Court therefore finds reasonable rates ranging from $625 to $950 for the senior counsel and partners in this wage and hour class action.  Thus, instead of the unsubstantiated $1,200 per hour sought by Righetti, the Court finds $900 per hour to be reasonable; instead of the $960 per hour sought by Glukoski, the Court finds $750 per hour to be reasonable;[2] and instead of the $1,050 per hour sought by Nathan, the Court finds $800 to be reasonable.  The Court will impose these rates to calculate the lodestar.

### b.    Reasonable Hours

"Having recommended the billing rates, the court turns to the second component of the lodestar calculation: ascertaining the number of hours reasonably expended litigating this matter."

---

[1] The Laffey matrix itself holds limited significance to rates in this District.  As others acknowledge, "[t]he Ninth Circuit has questioned the relevance of the Laffey matrix to determining a reasonable rate in the Bay Area."  *J & J Sports Prods., Inc. v. Ortiz*, No. 12-CV-05766-LHK, 2014 WL 1266267, at *3 n. 1 (N.D. Cal. Mar. 24, 2014) (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).

[2] The Righetti Declaration states that Glukoski's billing rate is $900 per hour, Dkt. No. 82 ¶ 11, while the Glukoski Declaration states that his billing rate is $960 per hour, Dkt. No. 88 ¶ 19.  Such a discrepancy between sworn declarations from attorneys at the same law firm does not weigh in favor of adopting counsel's requested rates.

United States District Court
Northern District of California

*Cotton*, 889 F. Supp. 2d at 1175-76.  The party moving for attorney's fees bears the burden of providing the Court with a detailed account of the hours spent litigating the case.  *Hensley*, 461 U.S. at 433.  Courts may exclude any hours not reasonably expended for being "excessive, redundant, or otherwise unnecessary."  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (noting that the requested hours "may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary.").  At the same time, the Supreme Court has instructed:

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011).  Consistent with this balanced approach and with an eye towards eliminating inefficiencies, the Court may use its discretion to give the fee award a 10% "haircut" across the board "without a more specific explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Applying these precepts, the Court finds it appropriate to make certain adjustments to the claimed hours.

Here, Righetti certifies that he expended 907.5 hours on this case.  Righetti Decl. ¶ 18.  Glugoski certifies that he expended 922.8 hours on this case.  Glugoski Decl. ¶ 24.  Nathan certifies that he expended 1,607.5 hours on this case.  Nathan Decl. ¶ 31.  Counsel's respective time records largely lack detail in their descriptions of counsel's tasks.  But further, their time records demonstrate a lack of billing judgment, with dozens of pages largely filled by overlapping 0.1-hour entries describing nothing more than "email," ostensibly to each other.[3]  *See* Righetti Decl., Ex. 2 (Dkt. No. 82-2); Nathan Decl., Ex. 2 (Dkt. No. 84-2).  These non-specific and seemingly redundant time entries do not support the reasonableness of the time expended by counsel on the case, but the Court must still credit that counsel have committed some three years

---

[3] This lack of billing judgment further undermines the reasonableness of counsel's requested hourly rates.

United States District Court
Northern District of California

United States District Court
Northern District of California

of effort on behalf of the class.  The Court will accordingly apply an across-the-board haircut of 10% to all of counsel's hours.

### c.     Calculation and Multiplier

Based on the figures reached in the preceding discussion, the Court calculates the lodestar as follows:

|  | Adjusted Hourly Rate | Reasonable Time (including 10% haircut) | Total |
|---|---|---|---|
| Righetti | $900 | 816.75 | $735,075 |
| Glukoski | $750 | 830.52 | $622,890 |
| Nathan | $800 | 1446.75 | $1,157,400 |
|  |  |  | **$2,515,365** |

Generally, there is a "strong presumption that the lodestar," absent a multiplier, is sufficient.  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-52 (2010)).  Thus, adjustments are reserved only for "rare and exceptional circumstances."  *Chambers*, 980 F.3d at 665.  Such rare circumstances include where an attorney engages in superior performance shown to achieve results "more favorable than would have been predicted based on governing law and the available evidence," an upward calculation can be appropriate.  *Perdue*, 559 U.S. at 554.

In appropriate cases, the Ninth Circuit has recognized that multipliers generally range from one to four.  *Vizcaino*, 290 F.3d at 1051 n.6.  District courts within the Ninth Circuit commonly apply multipliers in that range in California wage and hour class actions.  *See, e.g.*, *Kulik v. NMCI Med. Clinic Inc.*, No. 21-CV-03495-BLF, 2023 WL 2503539, at *9 (N.D. Cal. Mar. 13, 2023) (applying a multiplier of 1.83); *Uschold v. NSMG Shared Servs., LLC*, No. 18-cv-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (applying a multiplier of 4); *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *17-18 (N.D. Cal. Mar. 31, 2020) (applying a multiplier of 1.09); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (applying a multiplier of 2.0).

Here, a multiplier of 1.185 is calculated by dividing $2,979,756.94, the presumptive benchmark of 25% of the common fund after reducing costs and incentive awards, by the lodestar of $2,515,365.  Given the results achieved for the class and the risk counsel faced, applying a multiplier of 1.185 to the lodestar is reasonable here.  This multiplier recognizes the result achieved on behalf of the class while ensuring counsel's recovery remains commensurate with the skill required and quality of their work.  Indeed, a multiplier of 1.185 falls almost exactly at the 1.183 multiplier requested by counsel.  *See* Dkt. No. 81 at 20-21.

In sum, after reviewing the motion for awards, the supporting documents, and the relevant portions of the record, the Court finds an attorney's fee award of 25% of the settlement fund ($2,979,756.94) is fair and reasonable in light of all relevant factors including the risks involved, the results obtained, the contingent nature of the litigation, and the skill level demonstrated by counsel.  *See Vizcaino*, 290 F.3d at 1048-50.

## II.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for attorney's fees, costs, and incentive awards as follows:

- Class counsel is awarded $2,979,756.94 from the common fund and $31,972.22 in costs;
- ILYM is awarded $29,000 for the cost of its settlement administration services; and
- Named Plaintiffs Maciel and Torres are awarded $10,000 each for their service to the class.

**IT IS SO ORDERED.**

Dated: January 16, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

14